DISCIPLINARY COUNSEL v. JAFFE.

[Cite as *Disciplinary Counsel v. Jaffe,*
102 Ohio St.3d 273, 2004-Ohio-2685.]

(No. 2004–0065—Submitted March 15, 2004—Decided June 9, 2004.)

**Per Curiam.**

{¶ 1} Respondent, David I. Jaffe of Solon, Ohio, Attorney Registration No. 0005153, was admitted to the practice of law in Ohio in 1981. On March 17, 2003, relator, Disciplinary Counsel, charged respondent in a three-count amended complaint with violations of the Code of Professional Responsibility.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline heard the cause on August 12, 2003, at which time the parties submitted comprehensive stipulations of fact, misconduct, and exhibits concerning the three counts in the complaint and also two additional counts that had been under investigation. The panel made and the board adopted the following findings of fact.

## Count I

{¶ 3} A client hired respondent to pursue a personal-injury claim arising from a January 19, 2000 toe injury that she sustained in a parking garage. On February 7, 2000, respondent wrote to the parking company about the claim. From January 19, 2000, through November 2000, the client spoke with respondent weekly about her case, and respondent assured the client that her case was pending. Thereafter, the client continued to call respondent every few weeks about his progress, and he continued to assure her that "everything was fine."

{¶ 4} Around March 19, 2002, respondent gave the client a check for $250 and falsely told her that it was in settlement of her personal-injury action. In fact, respondent had not filed a lawsuit, negotiated a settlement, or even requested the client's medical records. Respondent actually drew the $250 check from his IOLTA account and paid the client just to placate her.

## Count II

{¶ 5} In the summer of 2000, another client engaged respondent to pursue a medical-malpractice and wrongful-death claim. After the client gave him medical records, respondent told her that he had reviewed them and sent them to a medical expert. The client told respondent that her previous attorney had already filed her case once and voluntarily dismissed it without prejudice.

{¶ 6} The client contacted respondent about her case several times during the fall and winter of 2000. Each time, respondent advised her that he was still waiting for the expert's evaluation. In the spring of 2001, respondent falsely told his client that he had filed a complaint on her behalf in the Lake County Court of Common Pleas. The client later discovered that respondent had lied. Respondent eventually stopped communicating with his client, and she ultimately lost the ability to pursue her claim.

## Count III

{¶ 7} In March 1999, a third client asked respondent to pursue a personal-injury case after her son's fingers were caught in a door of an elementary school. Respondent agreed to represent this client and her son for a contingent fee, and on December 7, 2000, respondent filed a lawsuit on their behalf in the Cuyahoga County Court of Common Pleas. In anticipation of litigation, the client video-

taped the operation of the school door and gave to respondent the videotape and the name of a security guard who she claimed was a witness. Respondent lost the videotape but did not tell his client.

{¶ 8} In the fall of 2001, respondent's client told him that she was not satisfied with his representation and was considering new counsel. Respondent then relayed a settlement offer of $500 to his client that she rejected. Respondent also ignored defense motions to compel discovery and did not oppose a defense motion for summary judgment. On December 20, 2001, the court granted summary judgment against the client. Respondent never told his client of the adverse judgment.

## Count IV

{¶ 9} On February 14, 2001, a fourth client engaged respondent to pursue a personal-injury claim arising out of injuries she sustained at a restaurant in Cedar Rapids, Iowa, on October 22, 1999. They entered into an attorney/client agreement in which respondent would receive a one-third contingent fee if the matter was settled prior to trial and a 40 percent contingent fee if respondent tried the case. On October 19, 2001, respondent filed a lawsuit in Cedar Rapids, Iowa, a jurisdiction in which he was not licensed to practice law. On March 13, 2002, the Iowa court dismissed the lawsuit for respondent's failure to perfect service, and respondent never advised his client of the dismissal. Despite her repeated requests, respondent also did not return this client's case file until after she had submitted her grievance to relator.

## Count V

{¶ 10} From October 1998 through April 2002, respondent wrote checks from his IOLTA account to pay personal and business expenses. The checks were paid with respondent's personal funds that he had deposited in his IOLTA account or that he had earned but had not transferred out of the account. At no time, however, was the balance in his IOLTA account insufficient.

{¶ 11} From the parties' stipulations as to Count I, the panel found that respondent had violated DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 6–101(A)(3) (barring neglect of a legal matter entrusted to him), and 9–102(A) (requiring proper deposit of funds of clients into an identifiable bank account). As to Count II, the panel found violations of DR 1–102(A)(4), 1–102(A)(5), and 6–101(A)(3). As to Count III, the panel found that respondent had violated DR 1–102(A)(5) and 6–101(A)(3). As to Count IV, the panel found respondent in violation of DR 6–101(A)(3). And as to Count V, the panel found that respondent had violated DR 9–102(A). The board adopted these findings.

{¶ 12} In recommending a sanction for this misconduct, the panel considered the aggravating and mitigating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel found that respondent had not been previously disciplined for professional misconduct and had cooperated in the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). The panel also found that respondent was suffering from clinical depression during the period when the misconduct occurred. See BCGD Proc.Reg. (10)(B)(2)(g) (recognizing the extenuating circumstances of mental disability where the attorney's condition has been professionally diagnosed, the condition contributed to the misconduct, the condition has been treated with success, and there is a professional prognosis for the attorney's competent and ethical return to the practice of law).

{¶ 13} Stipulated evidence established that respondent was under a doctor's care for major depression when he violated the cited Disciplinary Rules. The panel explained:

{¶ 14} "[Respondent's doctor was] Dr. Jerry Zober, a psychiatrist, who has prescribed medication for him and with whom he is being treated on a regular basis. He also was referred to Dr. Michael Schachere, a clinical psychologist, who is treating him on a regular weekly basis for depression. * * * Also, on July 7, 2003, Respondent entered into a contract with the Ohio Lawyers Assistance Program (OLAP) for three years. With regard to his mental health problems and the evidence that was presented, Respondent is fulfilling his obligations with OLAP. * * * [Respondent's] depression did in fact effect [sic] his abilities to functions [sic] in the cases as outlined above. Respondent had many pressures on him as he was very close with his father who died in 1997. Respondent is a trustee of a trust established by his father to take care of his handicapped brother. Respondent is on antidepressant medicine prescribed to him by his psychiatrist (Zoloft and Wellbutrin) and is seeing a psychologist on a weekly basis. Respondent has now restricted his law practice and is now operating his practice out of his home and has limited his practice to drafting Wills and Trusts and completing * * * six to eight personal injury cases * * *."

{¶ 15} As an aggravating factor, the panel found a pattern of misconduct, inasmuch as respondent had engaged in four different incidents of neglect. BCGD Proc.Reg. 10(B)(1)(c). The panel also observed that "even though Respondent entered into a contract with OLAP, and * * * is now addressing his mental health and depression problems, these [factors] do not eliminate or excuse his conduct," the severity and number of which warrant a "substantial sanction."

{¶ 16} Relator recommended a two-year suspension from the practice of law with the last year stayed on conditions of continued treatment and participation

in the Ohio Lawyers Assistance Program. Respondent's counsel argued for a one-year suspension with the entire suspension stayed on the same conditions and provided that respondent takes pertinent continuing-education courses on law-office management. After commending respondent for his efforts to overcome his depression, the panel recommended that respondent be suspended from the practice of law for two years, with the final 18 months of the suspension stayed on the conditions that he (1) commit no further misconduct, (2) continue treatment with his psychiatrist and clinical psychologist until released, (3) fulfill his contract and obligation with OLAP, and (4) complete a course of continuing legal education on law-office management. The board modified this sanction because of respondent's acts of dishonesty, and recommended that respondent be suspended from the practice of law for two years and that one year of the suspension be stayed on the conditions specified by the panel.

{¶ 17} Upon review, we agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 6–101(A)(3), and 9–102(A), as found by the board. We also find the recommended sanction appropriate. As the board noted, we imposed a similar limited suspension in *Disciplinary Counsel v. Crowley* (1996), 76 Ohio St.3d 365, 667 N.E.2d 1183, because an attorney attempted to conceal her repeated neglect of clients' cases through misrepresentations but proved extenuating circumstances, including serious depression.

{¶ 18} Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years, but the final year of the suspension is stayed on the conditions that during the suspension respondent (1) commit no further misconduct, (2) continue treatment with his psychiatrist and clinical psychologist until released, (3) fulfill his contract and obligation with OLAP, and (4) complete a course of continuing legal education on law-office management. If respondent violates any of the conditions of the stay, the stay will be lifted and respondent shall serve the entire period of the two-year suspension period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Lester S. Potash, for respondent.