STARK COUNTY BAR ASSOCIATION *v.* WATTERSON.

[Cite as *Stark Cty. Bar Assn. v. Watterson,*
103 Ohio St.3d 322, 2004-Ohio-4776.]

(No. 2003–1808—Submitted March 16, 2004—Decided September 22, 2004.)

———————

Per Curiam.

{¶ 1} Respondent, Tim M. Watterson of Canton, Ohio, Attorney Registration No. 0028264, was admitted to the practice of law in Ohio in 1982. On December 10, 2001, relator, Stark County Bar Association, charged respondent with four counts of professional misconduct, including violations of DR 2–106(A) (barring a lawyer from charging excessive legal fees) and 6–101(A)(3) (barring a lawyer from neglecting a client's case).

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline heard the cause on August 28, 2003, after 20 months of discovery efforts and preliminary legal proceedings. The panel made findings of fact, conclusions of law, and a recommendation. The board adopted the panel's report, including its recommendation to dismiss the fourth count of the complaint for insufficient proof of the charged neglect.

{¶ 3} After serving for years as a city and county assistant prosecutor in northern and northeastern Ohio, respondent began his own private law practice in 1994. He described his practice as modest. The grievances underlying relator's complaint arose from clients whom respondent represented in civil actions between 1998 and 2001.

{¶ 4} Before evaluating the events underlying the complaint, the panel reviewed the extensive prehearing proceedings. Adopting the panel's report, the board found that after being served with the complaint, respondent made four successive requests for additional time to obtain counsel and answer. All four requests were granted, but even with these extensions, respondent filed his answer pro se.

{¶ 5} A final hearing on the merits was scheduled for July 26, 2002. At the beginning of that month, respondent moved for a 90–day continuance to pursue discovery and retain counsel. The panel chair granted his request, and the hearing was rescheduled for October 29, 2002. Respondent was also given leave to file a motion for summary judgment on or before September 30, 2002.

{¶ 6} On September 30, 2002, respondent requested that relator be removed and that the second hearing date be continued. Respondent argued for relator's removal because in cases underlying two of these client grievances, the opposing parties had been represented by another attorney in the law firms with which relator's counsel and relator's investigator were associated. The chair denied the request to remove but granted a continuance on the condition that respondent obtain counsel and have his counsel enter an appearance by October 21, 2002.

{¶ 7} Counsel for respondent subsequently entered her appearance on October 18, 2002, and the hearing was rescheduled again, this time for March 28, 2003. The chair established a new January 24, 2003 deadline for filing any further motion to disqualify and set February 10, 2003, as the new deadline for respondent to move for summary judgment.

{¶ 8} Respondent later discharged his attorney, and in December 2002, that attorney moved for leave to withdraw. The panel chair granted this motion on December 17, 2002, retaining the existing procedural deadlines and final hearing date.

{¶ 9} During a teleconference on January 31, 2003, the panel chair learned that respondent had twice unilaterally canceled in response to notices of deposition and had been subpoenaed for a February 3, 2003 deposition. When respondent revealed during the teleconference that he could not attend the third scheduled deposition, the panel chair ordered him to attend a deposition within the first week of February 2003. On respondent's request to renew his motion to remove counsel for relator, the chair ordered that respondent could pursue removal only with leave because the January 24, 2003 deadline for this motion had already passed. The teleconference ended without any change of the February 10, 2003 deadline for summary judgment motions.

{¶ 10} On February 1, 2003, respondent filed in this court motions to remove relator, counsel for relator, and the panel chair, to stay his impending deposition, and to continue the March 28, 2003 hearing date. Respondent argued for relator's removal on the same conflict grounds that he had cited in his earlier motion, adding allegations about conversations that respondent and relator's counsel had had during relator's investigation. Respondent requested the panel chair's removal, arguing that she was "just not getting it," as demonstrated by her stated reluctance to grant summary judgment without conferring with the other panel members or to accommodate respondent's request for a two-day hearing.

{¶ 11} On February 14, 2003, relator filed in this court a motion to show cause why respondent should not be held in contempt for failing to appear for his deposition. Four days later, relator filed with the panel a motion to compel respondent to produce his trust-account check register and his case files for the grievants' suits, all of which had been requested initially in December 2002. On February 26, 2003, respondent asked the panel to stay consideration of the motion to compel, citing the motions pending in this court. On February 27, 2003, the panel chair denied a stay and granted the motion to compel, ordering respondent to produce the requested documents by March 7, 2003.

{¶ 12} Respondent failed to participate in the next teleconference, held on March 21, 2003, and relator reported that because respondent had not provided any discovery, relator had been unable to prepare for the March 28th hearing. The panel chair consequently canceled that hearing and ordered it to be rescheduled as soon as practicable.

{¶ 13} On April 24, 2003, we denied respondent's motions for removal, stay, and continuance, dismissing them sua sponte for want of authority. See *Watter-*

*son v. Stark Cty. Bar Assn.*, 98 Ohio St.3d 1545, 2003-Ohio-2032, 787 N.E.2d 8. On June 16, 2003, we cited respondent for contempt and ordered him to appear for his deposition. *Stark Cty. Bar Assn. v. Watterson,* 99 Ohio St.3d 1442, 2003-Ohio-3063, 790 N.E.2d 332. Thereafter, the panel chair ordered respondent to produce, by June 13, 2003, the documents sought by relator, and she set a telephone conference for June 24, 2003.

{¶ 14} Respondent participated pro se in the teleconference on June 24, during which the panel chair again scheduled a final hearing—this time for August 28 and 29, 2003. She also gave respondent leave until July 14, 2003, to file a motion for summary judgment and ordered the parties to submit before July 1, 2003, any motions concerning the production of respondent's bank-account records. She subsequently extended leave again for respondent to file a motion for summary judgment. On July 25, 2003, respondent waived this filing.

{¶ 15} On August 28, 2003, the hearing went forward as scheduled, with respondent continuing to represent himself. The parties provided testimony from the aggrieved clients, respondent, and two of respondent's former colleagues. The hearing concluded in one day.

### First Count—Greene

{¶ 16} In 1997, Shirley Greene was injured in two motor vehicle accidents. She engaged respondent to represent her, signing a contingency-fee agreement on September 18, 1997. In March 1999, respondent filed a single complaint naming the drivers in both accidents as defendants and inexplicably included a consortium claim on behalf of his client's husband, who had not consented to respondent's representation.

{¶ 17} During the representation of Shirley Greene, respondent failed to respond to interrogatories and document-production requests, he did not respond to opposing counsel's letter requesting such discovery, and he did not seek any extension. Before the December 27, 1999 trial date, respondent and his client attended a pretrial conference. Before the panel, Greene testified and respondent admitted that the trial judge had severely admonished him in his client's presence for failing to provide discovery and had also denied his request for a continuance of the trial date. On December 21, 1999, the defendants jointly moved to exclude at trial evidence of Greene's injuries, which were the subject of the unanswered discovery requests. The next day, respondent dismissed the Greene complaint without prejudice.

{¶ 18} Greene testified that respondent never told her about the dismissal of her case. Respondent testified that he had not asked for his client's specific permission to dismiss but had explained to Greene that her case might be

continued or dismissed temporarily to allow her to obtain more medical treatment for the pain she continued to experience.

{¶ 19} Respondent refiled the Greene complaint in September 2000, and he was again served with interrogatories and requests for production. Again, he did not respond. On January 11 and 18, 2001, defendants moved to dismiss the Greene complaint as a Civ.R. 37 sanction for respondent's failure to comply with discovery. Respondent served answers to the requested discovery on January 22 and 26, 2001, but did not respond to either motion to dismiss.

{¶ 20} The trial court granted, in part, respondent's motion for a protective order to prevent production of some of Greene's medical records. After a hearing, the court ordered respondent to pay as a sanction the defendants' attorney fees for preparing the dismissal motions.

{¶ 21} The parties to the Greene case subsequently agreed to mediate, and in March 2001, Greene accepted $5,000 in settlement of her claims. Respondent considered the offer too low, but Greene had become frustrated with respondent's inability to "follow through." As an example, Greene recounted a seven-month period during which she did not hear from respondent about her case. When she finally spoke with him, respondent advised that the matter was "on his desk" and that he would "take care of it." Greene said that in the end, she simply no longer trusted respondent to represent her. Respondent explained to the panel:

{¶ 22} "The judge chewed me out in a meeting with the client present, which really doesn't happen very often where you have the client present in chambers with the judge and all. And probably it unnerved the client. She probably took it more seriously or thought that the case was all botched up because of this."

{¶ 23} Greene's lack of faith in respondent and her recent treatment for an unrelated medical condition contributed to her desire to settle. Respondent, who claimed to have worked more than 40 hours on Greene's case, took $2,000, the 40 percent contingent fee that the agreement with his client provided. After deduction of respondent's fee, litigation expenses, and payment of medical bills, Greene's share of the settlement proceeds came to $2.68, an amount that she told respondent not "to insult" her by sending. In December 2001, after Greene filed her grievance, respondent refunded his $2,000 fee.

{¶ 24} Greene testified that she knew when she accepted the $5,000 offer that she would personally receive little or nothing from the settlement. Her goal, however, was to have her medical bills paid, and they were. For his part, respondent explained that he had prepared a draft of the answers to the interrogatories but had inadvertently failed to provide it. Respondent lamented this neglect because there "[c]ouldn't have been an easier set of discovery to respond to," but he still claimed that his actions did not adversely affect Greene's case.

{¶ 25} The board found clear and convincing evidence that respondent had violated DR 6–101(A)(3) in representing Greene. Respondent's repeated failures to respond to discovery requests and motions to exclude and to dismiss, plus his dismissal of Greene's case without her consent, show a pattern of neglect. Respondent offered nothing to excuse his neglect, which, the board found, twice brought Greene's claim "to the brink of total loss." The board did not find evidence that respondent's neglect changed the result in Greene's case, but it did find that his neglect destroyed her trust and confidence and caused her to give up on her case.

## Second Count—Moeller

{¶ 26} Kimberly Moeller retained respondent in 1997 on a contingent-fee basis to represent her in a personal injury action stemming from a 1996 auto accident. Respondent filed the case in 1998, and in 1999, after a two-day trial, Moeller was awarded a $1,154 jury verdict. Moeller's medical bills exceeded $7,000, and she incurred litigation costs of $2,176.02.

{¶ 27} Moeller testified that her mother, an insurance agent, had tried to get the insurance company to pay Moeller's medical bills. Moeller insisted, however, that respondent had promised to make sure that her medical bills were paid to the extent that the verdict would allow. Respondent said that he was under the impression that Moeller's mother was taking care of the medical-bill-subrogation problems. Either way, respondent did not send letters of subrogation protection regarding certain of Moeller's medical bills or keep track of how and whether the bills were paid. He also did not contemporaneously account to his client for the funds he received on her behalf.

{¶ 28} Moeller realized that all of her jury award would be needed to pay the $461.60 that respondent had charged in legal fees, her medical bills, and litigation expenses. Respondent deposited the verdict proceeds in his trust account, took his fee, and used the rest to pay some bills for litigation expenses. He came up short, however, leaving Moeller to pay some litigation and medical expenses herself.

{¶ 29} Respondent later moved for costs and obtained reimbursement in the amount of $670; however, he then took 40 percent of this amount, $268, as a contingent fee on top of the fee he had already taken. Respondent used the remaining funds to pay more litigation expenses and medical bills. Respondent did not discuss with Moeller his having taken an additional contingent fee.

{¶ 30} Sometime in September 1999, Moeller received a bill for $281 from an orthopedic provider. She sent the bill to respondent and tried without success to contact him. Moeller received a collection notice of the bill in April 2001. She filed her grievance because she had never received any accounting from respon-

dent regarding the distribution of the verdict funds, including which medical bills had been paid or the additional costs that the court had awarded after the verdict.

{¶ 31} After Moeller filed her grievance, respondent sent her a written accounting of the verdict funds and paid the orthopedic bill, albeit two years after the verdict, with a negotiated discount. He also returned his $600 legal fee. At the hearing, respondent recalled that he had sent a letter of protection promising to pay this medical provider's bill and may have sent such letters to other creditors; however, he could not remember.

{¶ 32} The board found clear and convincing evidence that respondent had violated DR 6–101(A)(3) in representing Moeller. For two years after her verdict, respondent did not account to Moeller for the funds he received on her behalf or for the payment of her litigation costs and medical care. The board found that respondent should have overseen the proper distribution of funds in Moeller's case regardless of her mother's offered assistance. Moreover, the board was troubled by respondent's inability to account for the status of all but one of his client's medical bills. Another unpaid medical bill had since been listed on Moeller's credit report.

{¶ 33} The board found clear and convincing evidence that respondent had also violated DR 2–106(A) by charging a clearly excessive fee. Although respondent had earned his fee in obtaining the jury verdict, the board found that he had overcharged his client by assessing a contingent fee on the costs that he recovered after the verdict and for which they had no agreement.

### Third Count—The Kings

{¶ 34} Deborah and Gordon King retained respondent to represent them in a claim against General Motors ("GM") and a local auto dealer, from whom they had purchased two cars. Deborah testified that the couple could not pay respondent's quoted fee and that respondent had offered to accept a contingent fee instead. Nevertheless, the written contract with respondent, signed on February 6, 1999, provided both for a "non-refundable minimum fee retainer" of $2,000 and a contingent fee of "40% of the gross value of any settlement received or verdict or judgment obtained at trial."

{¶ 35} In January 1999, prior to their agreement and shortly before the statute of limitations was due to expire, respondent filed suit on the Kings' behalf against the auto dealer, the dealership, and GM, the least liable defendant, in respondent's view. Respondent pursued discovery and retained an expert. In January 2000, shortly before trial, respondent obtained a settlement of $2,500 from GM. His clients later endorsed the settlement check, and he deposited the funds in his trust account. Also in January 2000, the auto dealer moved for summary

judgment, and on February 7, 2000, respondent dismissed the unresolved legal claims without prejudice and with his clients' knowledge. Respondent explained at the hearing that he dismissed the cause because his expert was not available for the upcoming trial date but that he had intended to refile the Kings' case.

{¶ 36} Thereafter, respondent took $2,000 of the GM settlement as payment for the nonrefundable retainer, leaving the remaining $500 in his trust account. Over the succeeding months, his relationship with the Kings deteriorated, and before the statute of limitations expired, he withdrew or was discharged as the Kings' attorney.

{¶ 37} The Kings later requested their share of the GM settlement, but respondent refused to pay them anything. Respondent contended that under their written fee agreement, the Kings owed him the $2,000 retainer plus 40 percent, or $1,000, of the $2,500 settlement. Because he had received only $2,500, including the $500 he had initially held in trust, of what he considered his $3,000 fee, respondent concluded that he owed nothing to the Kings.

{¶ 38} Respondent provided the Kings' case file to another attorney at the Kings' request before the statute of limitations expired. That attorney requested that the Kings pay a retainer as a condition of taking the couple's case. Because the Kings also could not pay this retainer, they could not hire the new counsel. The applicable statute of limitations foreclosed their claim soon afterward.

{¶ 39} The board found clear and convincing evidence that respondent had violated DR 2–106(A) in representing the Kings because he charged the nonrefundable retainer to the Kings on top of a contingent fee. Citing *Cuyahoga Cty. Bar Assn. v. Okocha* (1998), 83 Ohio St.3d 3, 697 N.E.2d 594, the board found that nonrefundable retainers are improper except in limited circumstances and that none of those circumstances was present in the Kings' case. The board also noted that if respondent had charged only the contingent fee, the Kings would have received $1,500 and might have been able to retain new counsel.

### Mitigation, Aggravation, and Sanction

{¶ 40} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board found a pattern of misconduct and multiple offenses, see BCGD Proc.Reg. 10(B)(1)(c) and (d), because respondent had jeopardized three clients' interests by committing several disciplinary violations during 1999 through 2001. Respondent also refused to acknowledge the wrongful nature of his conduct. See BCGD Proc.Reg. 10(B)(1)(g). While conceding that he may have made mistakes or could have done better in each client's case, respondent failed to appreciate the

adverse effect of his neglect or excessive fee. Respondent saw no ill effects, even though Greene lost faith in him and her case after the judge's admonishment, the Kings lost their claim to some degree because respondent kept their settlement proceeds, and Moeller failed to pay at least one creditor and nearly lost a portion of her jury award because respondent was irresponsible regarding her debts and then overcharged her.

{¶ 41} Having identified these losses, the board further found as aggravating features that respondent's victims were vulnerable and harmed. See BCGD Proc.Reg. 10(B)(1)(h). Respondent also did not make a timely, good faith effort to make restitution. See BCGD Proc.Reg. 10(B)(1)(i). He returned some fees, but only after clients filed grievances and relator requested repayment. Respondent also acted out of self-interest. See BCGD Proc.Reg. 10(B)(1)(b). He kept Moeller's money because he had worked hard in her case and thought that he had earned it; he kept the Kings' money because Mrs. King was a difficult client and had made him angry.

{¶ 42} As yet another aggravating consideration, the board found a lack of cooperation in the disciplinary process. See BCGD Proc.Reg. 10(B)(1)(e). Respondent persistently missed deadlines and otherwise obstructed the process in order to defend against the disciplinary charges. He unjustifiably and repeatedly accused various participants in the process of some impropriety. Relator's counsel aptly described respondent's behavior as "exasperating." At one point, respondent related his surprise at the contempt citation he received from this court for refusing to appear for his deposition. And in retrospect, respondent wondered "why the heck" he had not shown up after all, testifying that relator's counsel spent only an hour and a half deposing him and "couldn't have been nicer."

{¶ 43} Finally, several of respondent's actions and statements during the hearing suggested to the board "troubling gaps" insofar as respondent's basic understanding of his ethical responsibility to his clients. First, respondent insisted relative to the first count that he had never represented Greene's husband, yet he had filed consortium claims on his behalf. Second, respondent introduced an exhibit that he described as a new fee contract to avoid the nonrefundable-retainer problem underlying the third count. Relator observed that the revised contract also violated existing Disciplinary Rules because it did not allow clients to discharge respondent except after payment of an hourly rate or the contingent fee. Third, in defense of his actions relative to the fourth count that the board dismissed, respondent offered a letter that he had sent to other potential clients to show that respondent's level of professionalism was characteristically much higher than relator had documented. Respondent failed to realize that the letter might have been privileged and confidential. When respondent

moved to admit the letter, the panel chair sustained relator's objection on grounds of privilege.

{¶ 44} As mitigating features, the board considered that respondent, who was not suffering from mental illness or alcohol abuse during the events at issue, had no prior record of disciplinary measures. Moreover, two of respondent's friends, both attorneys who had worked with him in the Stark County Prosecutor's Office, attested to respondent's good character and abilities as a lawyer. Finally, respondent related that he had reduced the size of his practice because he believed that his voluminous workload had contributed to whatever mistakes he had made.

{¶ 45} Relator recommended a one-year suspension of respondent's law license, with six months stayed; respondent argued that none of his actions warranted suspension. Adopting the panel's recommendation, the board recommended that respondent receive a one-year suspension with six months stayed on the conditions that respondent commit no other disciplinary violations and that during the stayed suspension, respondent cooperate with a monitor appointed by relator to supervise his practice.

{¶ 46} Upon review, we agree that respondent violated DR 6–101(A)(3) and 2–106(A) as found by the board. We further agree that a one-year suspension with six months stayed on conditions is the appropriate sanction.

{¶ 47} Respondent objects at length to the board's findings of fact and law. We are not persuaded by his arguments. This record contains testimony or documentary proof to establish all of respondent's misconduct and the underlying facts. And by adopting the panel's findings wholesale, the board was well within its authority to credit the witnesses and exhibits it did over respondent's explanations and excuses for his excessive fees and neglect. See *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8 ("we ordinarily defer to a panel's credibility determinations in our independent review of professional discipline cases unless the record weighs heavily against those findings").

{¶ 48} Moreover, respondent provides no precedent to sustain his argument that the recommended sanction is too severe. In *Disciplinary Counsel v. Ames*, 99 Ohio St.3d 181, 2003-Ohio-2904, 790 N.E.2d 301, which involved several instances of an attorney's neglect and overcharging, we imposed a one-year suspension and stayed six months on conditions. And because respondent employed defensive tactics to delay and obfuscate the disciplinary process, which exacerbated his professional problems and distinguishes this case from one of relatively minor and inadvertent infractions, we agree that an actual suspension should result. Accord *Disciplinary Counsel v. Watson*, 98 Ohio St.3d 181, 2002-Ohio-7088, 781 N.E.2d 212.

{¶ 49} Accordingly respondent is hereby suspended from the practice of law in Ohio for one year; however, the last six months of this suspension are stayed on the condition that he commit no further violations of the Disciplinary Rules. Moreover, because we share the board's concern as to respondent's basic understanding of his ethical responsibility to his clients, we impose as a further condition of the stay that respondent's practice be supervised by an appointed mentor for one year. The year of supervision shall include the six months of stayed suspension and continue for the following six months. If respondent violates the Disciplinary Rules or fails to accept supervision of his practice by a mentor, the stay will be lifted, and the respondent shall serve the entire term of the suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Buckingham, Doolittle & Burroughs, L.L.P., Richard S. Milligan and William W. Emley Sr., for relator.

Tim M. Watterson, pro se.