LAKE COUNTY BAR ASSOCIATION *v.* RYAN.

[Cite as *Lake Cty. Bar Assn. v. Ryan,*
109 Ohio St.3d 301, 2006-Ohio-2422.]

(No. 2005–2053—Submitted January 11, 2006—Decided May 31, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Patrick T. Ryan of Waite Hill, Ohio, Attorney Registration No. 0022478, was admitted to the practice of law in Ohio in 1978.

{¶ 2} On May 16, 2005, relator, Lake County Bar Association, charged respondent in an amended two-count complaint with professional misconduct. Respondent answered, admitting many of the significant factual allegations but denying that he had violated the Disciplinary Rules or failed to cooperate in relator's investigation as required by Gov.Bar R. V(4)(G). A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

### Count I

{¶ 3} The charges in Count I arose from respondent's failure to act as promised in collection efforts to satisfy a multimillion-dollar consent judgment.

{¶ 4} In 1998, respondent represented John J. Zur Jr. and defended him against over 20 lawsuits that had been filed against several finance companies that Zur controlled, the "Ward Companies." The lawsuits were consolidated, a $7,000,000 consent judgment was entered, and several creditors' counsel formed the Zur Creditors' Committee to collect the judgment. Under the terms of the consent judgment, Zur was permitted to continue business operations in an effort to pay creditors. Pursuant to this arrangement, the creditors' committee agreed to allow Zur to collect accounts owed to and foreclose mortgages held by the Ward Companies, with the proceeds to be deposited in an escrow account for the creditors' benefit.

{¶ 5} In January 1999, respondent advised the creditors' committee that four large debts owed to the Ward Companies were in default and secured by mortgages subject to foreclosure. On January 28, 1999, respondent wrote to a member of the committee, attorney Donald A. Richer, and offered to pursue the four foreclosure actions on Zur's behalf. Respondent first proposed that he be paid $2,000 per action, including trial, with half of the fee to be paid at inception

and half to be paid after judgment. Richer countered, on the committee's behalf, offering to pay respondent $125 per hour, with a $1,500 cap on attorney fees in each case. Respondent accepted these terms, and the committee paid him a $3,000 retainer. Respondent failed to deposit the unearned $3,000 retainer in a client trust account and used the money instead for his personal expenses.

{¶ 6} In undertaking the committee's representation, respondent agreed to prepare and file the necessary foreclosure papers and to make periodic progress reports to the committee. In April 1999, respondent represented to the committee that the foreclosure complaints would be filed. When Richer heard nothing more of respondent's progress, however, he wrote to respondent on June 12, 1999, and asked that he provide by June 21, 1999, a promised status report, copies of pleadings, and an accounting of his fees. Respondent did not reply.

{¶ 7} On June 26, 1999, Richer again wrote to respondent, this time demanding return of the $3,000 retainer by July 1, 1999. Respondent again did not reply. Jeffrey Lehman, another member of the creditors' committee, wrote to respondent on July 15, 1999, also demanding a full refund. Lehman's letter recounted an earlier conversation during which respondent had disclosed to Lehman that he and Zur had decided, without approval of the creditors' committee, not to pursue the planned foreclosure actions. Respondent also did not reply to this letter.

{¶ 8} On July 23, 1999, Lehman wrote a second time to demand the $3,000, and respondent again did not reply. On February 26, 2000, Richer wrote to remind respondent of his promise several days earlier to account by March 6, 2000, for his time in the foreclosure cases. Respondent did not provide the accounting. On March 11, 2000, Richer again wrote to respondent, this time warning that if respondent did not provide the accounting and a refund by March 31, 2000, the creditors' committee would file suit, a grievance, or both, against him. Respondent did not reply.

{¶ 9} Attorney Robert B. Weltman was appointed to oversee efforts to collect the judgment against the Ward Companies in June 1999, and when the creditors' committee could not get respondent to repay his fee, the committee referred the claim to Weltman. Weltman wrote to respondent on April 19, 2000, and threatened legal action if respondent failed to return the committee's retainer. Respondent did not pay, and on May 22, 2000, Weltman sued respondent in the Cuyahoga County Common Pleas. The common pleas court awarded a $3,385.48 judgment, plus interest and court costs, to the creditors' committee. In settlement of the committee's claim, respondent eventually paid back the $3,000 retainer, but after paying Weltman's $1,000 fee and $142 in costs, the committee received only $1,858 of the settlement amount.

{¶ 10} Richer filed a grievance against respondent. On May 24, 2000, relator's investigator sent respondent a certified letter inquiring about the allegations.

Respondent telephoned the investigator nine days later, and the investigator promptly returned his call. Respondent did not contact the investigator again, nor did he respond to the investigator's letter by the date requested.

{¶ 11} As to Count I, the panel and board described respondent's testimony as "self-serving and lacking candor" and Zur's testimony as "flexibly vague and unpersuasive." The panel and board found:

{¶ 12} "The evidence is clear and convincing that Respondent was retained by the Zur Creditors' Committee to begin and complete proceedings to foreclose four mortgages. He falsely represented to his client that he had prepared the necessary documents and soon would file them, when he had not done and never did do the work he was retained to do. He repeatedly failed to respond to numerous communications from members of the Zur Creditors' Committee to keep the committee informed and provide status reports as promised. He never provided statements for services rendered with supporting documents. He did none of the work for the Zur Creditors' Committee for which he was retained. * * * Furthermore, Respondent[ ] fail[ed] to place the $3,000.00 retainer into an appropriate [trust] account and * * * fail[ed] to return the unused portion of said retainer to the Zur Creditors Committee, despite numerous requests to do so * * *."

{¶ 13} For these acts, the panel and board found respondent in violation of DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment), 9–102(A) (requiring a lawyer to preserve client funds in a separate, identifiable bank account), and 9–102(B)(4) (requiring a lawyer to return client funds promptly on request). Because respondent failed to respond to investigative inquiries, the panel and board also found respondent in violation of Gov.Bar R. V(4)(G).

### Count II

{¶ 14} The charges in Count II arose from respondent's representation of a couple who had been denied unsupervised visitation with their grandchild.

{¶ 15} On April 12, 1999, the couple met with respondent and paid him $2,500. Respondent did not place the unearned fee in a client trust account as required. He instead immediately used these funds for his personal expenses, treating the retainer as if earned upon receipt.

{¶ 16} One month or so later, the wife called respondent to learn the status of the case. Respondent reported that he was working on it and would get back to the couple. The wife called again several weeks later, and respondent again reported that he was working on their case and would call the couple when he

had some information. The client continued to call respondent periodically but received no response. In late 1999 or early 2000, the couple asked respondent in writing for an itemized statement of his services and for the return of any unearned fees. The letter was returned, stamped "no such address."

{¶ 17} On July 24, 2000, the wife filed a small-claims complaint against respondent in the Painesville Municipal Court for the unearned fees. On September 25, 2000, the court ruled in the clients' favor, entering judgment against respondent for $2,500, plus interest and costs. Respondent repeatedly challenged the judgment but was never successful. As of the panel hearing, respondent still had not paid his clients the judgment amount.

{¶ 18} Respondent's clients appeared and testified against him at the panel hearing. The panel and board found that though both were elderly and unable to distinctly recall events, their dealings with respondent were solidly corroborated by stipulated exhibits. The panel and board further found that respondent had violated DR 6–101(A)(3) and 7–101(A)(2) by his "failure to respond to [the couple's] repeated telephone calls, failure to notify [the couple] of his change of business address, and failure to keep [the couple] informed of the status of the pending legal matter they entrusted to [him]." The panel and board also found respondent in violation of DR 9–102(A), 9–102(B)(3) (requiring a lawyer to maintain complete records and render appropriate accounts of a client's property), and 9–102(B)(4) because he failed to deposit the $2,500 retainer into an appropriate trust account, failed to return this money on request, forcing his clients to sue him, and then failed to satisfy the judgment against him.

### Recommended Sanction

{¶ 19} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 20} In mitigation, the board found that respondent had practiced law for approximately 27 years without having received professional discipline. BCGD Proc.Reg. 10(B)(2)(a).

{¶ 21} As an aggravating feature, the board found that respondent had acted with a dishonest and selfish motive by retaining unearned funds from his clients and repaying none of it until forced through litigation. BCGD Proc.Reg. 10(B)(1)(b). Also in aggravation, the board found a pattern of misconduct and multiple offenses. BCGD Proc.Reg.10(B)(1)(c) and (d). Moreover, although respondent eventually cooperated once a formal complaint was filed, respondent did not cooperate with relator's investigation. BCGD Proc.Reg. 10(B)(1)(e).

{¶ 22} The panel and board were also skeptical about respondent's explanations for his misconduct. Although respondent claimed to have legitimately charged the clients in Count II nonrefundable retainers, or a fee earned upon receipt, the panel and board noted that except for limited circumstances not present here, this practice was declared unethical years ago. See *Cuyahoga Cty. Bar Assn. v. Okocha* (1998), 83 Ohio St.3d 3, 697 N.E.2d 594. Respondent also attempted to excuse his misdeeds as misunderstandings. He blamed some of his failings on his attempts to avoid favoring the Zur Creditors' Committee over his client Zur where he alleged that their interests conflicted. He also denied misrepresentations to the creditors' committee about filed foreclosures, insisting that he thought Zur had initiated these proceedings.

{¶ 23} In addition, the board found that the clients in Count II were especially vulnerable due to their age and situation, an aggravating circumstance under BCGD Proc.Reg. 10(B)(1)(h). Respondent failed to pay this couple restitution, an aggravating circumstance under BCGD Proc.Reg. 10(B)(1)(i). Moreover, regarding Count I, he did not reimburse the Zur Creditors' Committee for the attorney fees, costs, and interest lost due to his failure to refund that retainer.

{¶ 24} The board also observed that respondent offered no character references and did not claim mental disability or chemical dependency, mitigating circumstances under BCGD Proc.Reg. 10(B)(2)(e) and (g). Finally, because the aggravating factors in his case far outweighed the mitigating features, the board concluded that respondent's promises to change and redeem himself professionally were unreliable.

{¶ 25} Relator advocated a six-month suspension from the practice of law and an order for full restitution to the Zur Creditors' Committee and to the clients in Count II. If a recommendation to stay the suspension were made, relator further urged the panel and board to make restitution a condition of the stay.

{¶ 26} Adopting the panel's findings, the board recommended that respondent be suspended from the practice of law for a period of two years, with the second year of the suspension stayed on the conditions that within 30 days of the final order in this case, respondent (1) make full restitution to the Zur Creditors' Committee for attorney fees and costs paid to recover the $3,000 retainer, plus interest, and (2) pay in full the judgment recovered by the clients in Count II for the $2,500 retainer, plus costs and interest as accrued on the judgment. The board further recommended that respondent be required to complete a one-year probation period during the stayed suspension pursuant to Gov.Bar R. V(9), to include relator's appointment of an attorney to monitor his practice, and that respondent pay the costs of these proceedings. Respondent does not object to the board's recommendation.

Review

{¶ 27} We agree that respondent violated DR 1–102(A)(4), 6–101(A)(3), 7–101(A)(2), 9–102(A), 9–102(B)(3), and 9–102(B)(4), and Gov.Bar R. V(4)(G), as found by the board.

{¶ 28} Moreover, when faced with similar misconduct and aggravating factors in other cases, we have imposed sanctions ranging from actual suspensions, with conditional stays, to indefinite suspensions. See *Stark Cty. Bar Assn. v. Watterson*, 103 Ohio St.3d 322, 2004-Ohio-4776, 815 N.E.2d 386 (one-year suspension with six months stayed on condition that respondent commit no further misconduct and complete a one-year monitored probation period); *Cuyahoga Cty. Bar Assn. v. Jurczenko*, 106 Ohio St.3d 123, 2005-Ohio-4101, 832 N.E.2d 720 (two-year suspension, with the second year of the suspension stayed on the conditions that the lawyer refund fees, complete six hours of continuing legal education in law-office management, and complete a one-year probation during the stayed suspension period); and *Columbus Bar Assn. v. Torian*, 106 Ohio St.3d 14, 2005-Ohio-3216, 829 N.E.2d 1210 (indefinite suspension). Thus, we also agree that a two-year suspension, with one year stayed on conditions, including restitution and probation, is appropriate.

{¶ 29} Respondent is therefore suspended from the practice of law in Ohio for a period of two years. The second year of the suspension is stayed on the conditions that within 30 days of our order, respondent make full restitution to the Zur Creditors' Committee for attorney fees and costs paid to recover the $3,000 retainer, plus interest at the judgment rate, and pay in full the judgment recovered by the clients in Count II for the $2,500 retainer, plus costs and interest as accrued on the judgment; and that he complete a one-year probation during the stayed suspension pursuant to Gov.Bar R. V(9), to include the monitoring of his practice by an attorney appointed by relator. If respondent fails to comply with the terms of the stayed suspension, the stay will be lifted, and respondent shall serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

James P. Koerner, for relator.

Patrick T. Ryan, pro se.