COLUMBUS BAR ASSOCIATION *v.* KIZER.

[Cite as *Columbus Bar Assn. v. Kizer,* 123 Ohio St.3d 188, 2009-Ohio-4763.]

*Attorneys at law — Misconduct — Multiple violations of the Rules of Professional Conduct and Code of Professional Responsibility — License suspension.*

(No. 2009-0466 — Submitted April 21, 2009 — Decided September 17, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-007.

_____

**Per Curiam**.

{¶ 1}   Respondent, Tanya Johnston Kizer, of Columbus, Ohio, Attorney Registration No. 0073402, was admitted to the Ohio Bar in 2001.  In September 2008, she registered her professional status as inactive.  The Board of Commissioners on Grievances and Discipline recommends that this court suspend her license to practice law for 18 months, based on findings that she neglected several legal matters to the prejudice of her clients' interests, accepted retainers that she did not deposit in her trust account, received fees for work she did not perform, and failed to return those unearned fees.  We agree that respondent committed professional misconduct as found by the board and that her conduct warrants an 18-month suspension.

{¶ 2}   In a four-count amended complaint, relator, Columbus Bar Association, charged respondent with violations of the Code of Professional Responsibility, the Rules of Professional Conduct, and the Gov.Bar R. VI(1)(D) requirement that attorneys notify the Supreme Court Attorney Registration Office of the attorney's current address.  A panel of the board conducted a hearing, at which the parties offered stipulations of fact.  The parties withdrew stipulation five, and the panel unanimously adopted the remaining stipulated facts as part of

the findings of fact in this matter. After the hearing, the parties submitted a joint memorandum to assist the panel in determining which violations occurred before and after the February 1, 2007 effective date of the Rules of Professional Conduct. The panel treated that memorandum as a stipulation, but found that certain stipulated violations were not proven by clear and convincing evidence to have occurred before February 1, 2007.

{¶ 3} Based upon the stipulations, the panel made findings of fact and conclusions of law and recommended that respondent be suspended from the practice of law for 18 months, commencing on September 17, 2008 – the date that respondent voluntarily changed her registration status to inactive. Additionally, the panel recommended that her reinstatement be subject to the more stringent requirements of Gov.Bar R. V(10)(C) through (G), including making restitution and (1) continuing to work with qualified mental-health professionals of her choice as necessary, (2) immediately submitting to a substance-abuse assessment by the Ohio Lawyers Assistance Program ("OLAP") or a comparable qualified agency, and (3) fully complying with any treatment regimen or other recommendations by OLAP or the comparable qualified agency regarding substance abuse. The board adopted the panel's findings fact, conclusions of law, and recommendation.

### Background Facts

{¶ 4} The board found that respondent graduated from law school in 2000, but did not begin her private practice until 2003. The board noted that in addition to the pressure of being a young sole practitioner, respondent experienced a number of serious stress factors in her personal life. As a cost-saving measure, she attempted to use her home as her office. But by early 2007, she had effectively abandoned her practice when she failed to return telephone calls, check her e-mail messages, retrieve her mail, and attend court appointments.

{¶ 5} In June, July, and August 2007, relator received grievances filed by respondent's former clients, Chad Webb, Joseph Watson, and John Salmons. Relator's initial efforts to serve those grievances upon respondent were unsuccessful because she no longer had an office or received mail at the address she had registered with this court. Respondent became aware of the grievances in late August 2007, and voluntarily sought assistance from OLAP. Although she met with relator's counsel in September 2007, she did not respond to the grievances in writing as requested. Although she did submit a written response to a fourth grievance filed by Derwin Hairston, her response was not timely. Despite difficulty maintaining contact with respondent, relator was able to depose respondent in March 2008.

{¶ 6} Stephanie Krznarich, a licensed independent social worker supervisor and licensed chemical dependency counselor at OLAP, conducted an assessment and diagnosed respondent with drug and alcohol dependencies, as well as mental disorders. Respondent signed a four-year OLAP contract, but abandoned it after only 11 days, citing a personality clash with one OLAP employee and her discomfort with OLAP's emphasis on chemical dependency, which she did not believe was her problem.

{¶ 7} In October 2007, respondent elected to seek mental-health treatment without OLAP's supervision. After an initial assessment at Netcare Access, a crisis mental-health clinic, respondent began to see a counselor. And after a brief hospitalization for psychiatric care, she continued to receive psychiatric care on an outpatient basis. The panel accepted into evidence, without objection, a letter from respondent's treating psychiatrist stating: "Her diagnosis is major depression recurrent severe with no psychosis. With this diagnosis it is determined that her mental disability contributed to her misconduct at work as a lawyer. Currently, she is under treatment and her symptoms are under control." In that letter, respondent's psychiatrist also opined that respondent will be able to

return to work as a lawyer and that she will be able to practice "ethically, competently, and professionally."

**{¶ 8}** Respondent stipulated and the board found that respondent had committed the following misconduct.

*Count One*

**{¶ 9}** In 2005, Chad Webb paid respondent $1,000 to pursue child-custody and dependency matters. Respondent did not deposit this retainer in her trust account. In June 2006, respondent also filed a motion for allocation of a dependency exemption in a separate matter. By March 2007, Webb was unable to locate respondent. She failed to communicate with Webb, as she had abandoned her office and had left no forwarding information. Respondent failed to notify Webb of a May 2007 hearing on his allocation-of-dependency exemption and failed to appear on his behalf, resulting in dismissal of the motion. After Webb filed a grievance, respondent secured a November 2007 hearing date for Webb's child custody and dependency case. Respondent failed to appear, and the magistrate dismissed the matter. Although respondent obtained reinstatement of the case, Webb again had difficulty contacting her and obtained new counsel. These defects in respondent's representation of Webb caused him delay and expense.

*Count Two*

**{¶ 10}** In January 2007, Joseph Watson paid respondent $800 to represent him in a visitation matter. Respondent failed to file the documentation required to establish Watson's paternity, however, and she failed to appear at an August 2007 hearing on his behalf. Neither Watson nor his new attorney could reach respondent after March 2007. Respondent has not forwarded Watson's file to his new attorney and has not returned Watson's fees. Her conduct substantially delayed and hampered Watson's legal objective of securing visitation with his children.

*Count Three*

{¶ 11} In October 2007, respondent accepted a $500 retainer from Derwin L. Hairston to file a motion to modify parental rights. Respondent filed the motion, but when she failed to appear at the December hearing, the trial court continued the matter. Hairston never heard from respondent again. The trial court granted his pro se motion for continuance to obtain new counsel, but he suffered delay and economic loss as a result of respondent's failure to act on his behalf. Although she did not earn it, respondent has not refunded Hairston's retainer.

*Count Four*

{¶ 12} In December 2006, John Salmons paid respondent $1,500 to represent him in a divorce. Respondent failed to deposit the retainer in her trust account, even though she had not earned the fees. Although respondent made several court appearances for Salmons, he was ultimately unable to reach her and hired new counsel. Despite her representations that she would send Salmons a statement and return any balance due, respondent never provided Salmons with either an accounting or a refund.

**Misconduct**

{¶ 13} Respondent admits that she engaged in a pattern of misconduct by neglecting legal matters entrusted to her and prejudicing the interests of clients Chad Webb, Joseph Watson, Derwin L. Hairston, and John Salmons. She stipulated that she accepted retainers from Webb and Salmons for fees to be earned in the future but failed to deposit them in her trust account. She further acknowledged that she did not earn the fees she collected from Watson and Hairston and has not returned the unearned portion of those fees, although she intends to do so.

{¶ 14} The record demonstrates that despite the complaining clients' repeated efforts to reach respondent during the course of her representation, they

could not reach her. She failed to respond to communications regarding their legal matters and failed to attend numerous court hearings. Respondent neglected her duties as an attorney through her inaction and unavailability, causing delay, additional expense, and prejudice to her clients.

{¶ 15} The parties have stipulated, the board has found, and we conclude that relator has proven by clear and convincing evidence that respondent violated the following provisions of the Ohio Rules of Professional Conduct with respect to each of the four counts in the complaint: Prof.Cond.R. 1.1 (failing to provide competent representation), 1.3 (failing to act with reasonable diligence and promptness), 1.4(a)(3) (failing to keep the client reasonably informed about the status of a matter), and 8.4(h) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law). The parties have further stipulated, and we concur, that relator proved by clear and convincing evidence that with respect to Salmons, respondent violated Prof.Cond.R. 1.15(c) (failing to place unearned funds in an IOLTA account) and (d) (failing to provide an accounting, and failing to promptly deliver to a client funds to which he is entitled), and with respect to Hairston, Prof.Cond.R. 1.15(d).

{¶ 16} Because some of respondent's actions in the Salmons matter allegedly occurred before February 1, 2007, the effective date of the Rules of Professional Conduct, relator also charged respondent with violations of the Code of Professional Responsibility. Although the parties stipulated to respondent's violation of several of these Disciplinary Rules, the panel and the board found that relator has proven by clear and convincing evidence only that respondent had violated DR 9-102(A)(2) (failure to place funds of a client in an IOLTA account). Because the evidence of the remaining alleged violations of the Code of Professional Responsibility did not clearly and convincingly demonstrate that the conduct occurred prior to February 1, 2007, the board recommended the dismissal of the additionally charged violations. In accord with the panel recommendation,

the board also recommends dismissal of the alleged violations of Gov.Bar R. VI(1)(D). We adopt these findings and recommendations of the board in toto.

**Sanction**

**{¶ 17}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, at ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, at ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 18}** As aggravating factors, the board noted that respondent's pattern of misconduct extended over a period of several months and involved multiple violations that harmed some of her clients. BCGD Proc.Reg. 10(B)(1)(c) and (d). She failed to honor her OLAP contract and failed to fully cooperate in the disciplinary process during the investigative phase, although she was cooperative during the later stages of the proceeding. BCGD Proc.Reg. 10(B)(1)(e). Additionally, respondent has not yet made restitution to her clients for unearned fees. BCGD Proc.Reg. 10(B)(1)(f).

**{¶ 19}** In mitigation, the board found that respondent has no prior disciplinary record, demonstrated a cooperative attitude at the hearing, BCGD 10(B)(2)(a) and (d), and remorse for her conduct, and acknowledged her duty to make restitution to former clients for unearned fees. Although the unsworn letter from respondent's psychiatrist did not fully satisfy the requirements of BCGD

Proc.Reg. 10(B)(2)(g), the board noted that it demonstrated a clear inference that respondent's major depression contributed to her misconduct.

{¶ 20} Additionally, the board noted that respondent appears to possess the skills and intelligence necessary to practice law and make a positive contribution to society. She is sincere in her efforts to get her life in order and to conquer her mental difficulties. Although her testimony suggests that respondent believes that she will be ready to resume the practice of law within 18 months, the board expressed concern that no one presented medical testimony to address the timetable for her recovery. Moreover, as the board observed, it is unclear from the record whether respondent has a substance-abuse problem for which she needs treatment.

{¶ 21} Based upon the foregoing, the board recommends that we suspend respondent from the practice of law for 18 months and make her reinstatement subject to the more stringent requirements of Gov.Bar R. V(10)(C) through (G), which includes restitution, as well as the prerequisites that she (1) continue to work with qualified mental-health professionals of her choice as necessary, (2) immediately submit to a substance-abuse assessment by OLAP or a comparable qualified agency, and (3) fully comply with any recommendations by OLAP or the comparable qualified agency regarding substance abuse.

{¶ 22} As the board has recognized, we have previously imposed two-year suspensions for comparable conduct that also involved lies and deceit. See, e.g., *Columbus Bar Assn. v. Ellis*, 120 Ohio St.3d 89, 2008-Ohio-5278, 896 N.E.2d 703, ¶ 4, 13 (two-year suspension for engaging in a pattern of deceit, neglect, and miscommunication with 18 clients); *Disciplinary Counsel v. Bowman*, 110 Ohio St.3d 480, 2006-Ohio-4333, 854 N.E.2d 480, ¶ 36, 40 (two-year suspension for multiple instances of neglect, dismissal of client matters with prejudice, and intentional prejudice or damage to a client during the course of the professional relationship). We have also imposed two-year suspensions with part

of the suspension stayed in cases involving client neglect, failure to deposit retainers into a client trust account, and failure to promptly return unearned fees to clients upon request. See *Lake Cty. Bar Assn. v. Ryan*, 109 Ohio St.3d 301, 2006-Ohio-2422, 847 N.E.2d 430, ¶ 20-21 (two-year suspension with second year stayed on conditions after weighing his 27 years of practice without disciplinary action as mitigating factor); *Disciplinary Counsel v. Friedman*, 114 Ohio St.3d 1, 2007-Ohio-2477, 866 N.E.2d 1076, ¶ 63 (two-year suspension with final six months stayed on conditions based in part on the mitigating factor of substance abuse); *Disciplinary Counsel v. Greco*, 107 Ohio St.3d 155, 2005-Ohio-6045, 837 N.E.2d 369, ¶ 57 (two-year suspension with 18 months stayed based, in part, on the mitigating factor of substance abuse); *Disciplinary Counsel v. Jaffe*, 102 Ohio St.3d 273, 2004-Ohio-2685, 809 N.E.2d 1122, ¶ 18 (two-year suspension with one year stayed based in part on the mitigating factor of clinical depression). But in this case, based upon respondent's ongoing mental health difficulties and possible substance abuse, the board stated that respondent should not be permitted to return to the practice of law in less than 18 months.

{¶ 23} After weighing the aggravating and mitigating factors in this case and considering the sanctions imposed for comparable conduct previously, we adopt the board's recommended sanction. Accordingly, respondent is hereby suspended from the practice of law in Ohio for 18 months commencing on September 17, 2008. Her reinstatement shall be conditioned upon making restitution to her clients in the following amounts: $1,000 to Chad Webb, $800 to Joseph Watson, $500 to Derwin Hairston, and $1,500 to John Salmons. In addition, respondent must satisfy the requirements of Gov.Bar R. V(10)(C) through (G) and must (1) continue to work with qualified mental-health professionals of her choice as necessary, (2) immediately submit to a substance-abuse assessment by OLAP or a comparable qualified agency, and (3) fully

comply with any recommendations by OLAP or a comparable qualified agency regarding substance abuse. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Isaac Brant Ledman & Teetor and Joanne S. Peters; and Bruce A. Campbell and A. Alysha Clous, for relator.

_____