[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Rumizen,* Slip Opinion No. 2019-Ohio-2519.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2519

DISCIPLINARY COUNSEL *v.* RUMIZEN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Rumizen,* Slip Opinion No. 2019-Ohio-2519.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with 18 months stayed on conditions.*

(No. 2019-0217—Submitted March 6, 2019—Decided June 27, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-027.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Scott Andrew Rumizen, of Beachwood, Ohio, Attorney Registration No. 0058561, was admitted to the practice of law in Ohio in 1992.  In May 2018, relator, disciplinary counsel, charged Rumizen with violating the Rules of Professional Conduct by purposely underpaying a former colleague pursuant to their fee-sharing arrangement.  Rumizen stipulated to the charges against him, and

after a hearing, the Board of Professional Conduct found that he had engaged in the stipulated misconduct and recommended that we suspend him for two years, with 18 months stayed on conditions. The parties have jointly waived objections and request that we adopt the board's recommendation.

{¶ 2} Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 3} In 2010, Rumizen commenced working as an independent contractor for Kraig & Kraig, a law firm owned by Brian Kraig. In 2013, Rumizen notified Kraig that he intended to create a new law firm, and they thereafter discussed how to divide their pending caseload. They agreed that Rumizen would take more than 100 pending client matters—mostly personal-injury cases—and that in exchange, Rumizen would pay Kraig a certain percentage of the fee he received in each of those cases. The percentage varied depending on whether Kraig had initiated the representation and how much work seemed to remain to be done in each case.

{¶ 4} At Rumizen's disciplinary hearing, he testified that he had underestimated the amount of work necessary to complete those client matters. Therefore, he explained, after about seven months at his new law firm, he attempted to renegotiate the terms of his fee-sharing arrangement with Kraig but Kraig refused. Kraig testified, however, that Rumizen never approached him about renegotiating their arrangement and that if Rumizen had requested a higher percentage of fees based on his extra work in a particular case, Kraig would have agreed to the modification. The board found Kraig's testimony more credible.

{¶ 5} Regardless, the parties stipulated that in 13 of the client matters transferred to Rumizen, he purposely underpaid Kraig the amount to which Kraig was entitled under their fee-sharing arrangement. For example, Rumizen settled one of the personal-injury claims for $170,000 and received $62,000 in attorney fees. Rumizen should have paid Kraig $15,000 pursuant to the terms of their

2

arrangement. However, Rumizen falsely represented to Kraig that the matter had settled for only $60,000 and that he had received only $15,000 in attorney fees. He therefore paid Kraig only $3,750. The parties also stipulated that Rumizen failed to inform Kraig about eight settlements. For example, Rumizen settled one matter for $67,500 and received $18,000 in attorney fees. Although Kraig was entitled to $1,800 of those fees, Rumizen failed to notify him of the settlement and therefore failed to pay him his share.

{¶ 6} Rumizen engaged in this misconduct for approximately two years. To conceal his actions, he created false settlement-disbursement sheets by changing the amount of the settlement, the amount of fees he received, or the costs for medical expenses. In some cases, he forged client signatures on the false disbursement sheets so that Kraig would believe that the sheets accurately reflected the settlement in the matter.

{¶ 7} In December 2016, Kraig received an anonymous letter notifying him of Rumizen's misconduct. Kraig confronted Rumizen with the letter, and although Rumizen initially denied the allegations, he soon acknowledged that he had been underpaying Kraig. Rumizen and his law firm later hired an accounting firm to audit the cases subject to the fee-sharing arrangement, and Rumizen paid restitution to Kraig in the amount of $48,457.81—the remaining amount to which he was entitled under their arrangement—plus $2,883.77 in lost interest. In 2018, Rumizen and his law firm paid Kraig an additional $100,000 to settle any civil claims.

{¶ 8} Based on this conduct, the parties stipulated and the board found that Rumizen violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also found that Rumizen's misconduct was sufficiently egregious to warrant a finding that he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

**{¶ 9}** We agree with the board's findings of misconduct.

## Sanction

**{¶ 10}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 11}** As aggravating factors, the board found that Rumizen had acted with a dishonest and selfish motive, he had engaged in a pattern of misconduct, and he had committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2), (3), and (4). In mitigation, the board found that Rumizen has a clean disciplinary record, he had made restitution to Kraig and paid him an additional $100,000 to settle a threatened lawsuit, he had displayed a cooperative attitude toward the disciplinary proceedings and fully disclosed his wrongful conduct, and he had submitted substantial character and reputation evidence, including 44 reference letters and the testimony of two character witnesses, one of whom is a judge. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (5). The board also found that Rumizen had taken full responsibility for his actions, expressed remorse, and refrained from minimizing his conduct. The board acknowledged that Rumizen had self-reported his misconduct to relator but gave this fact limited weight in mitigation because the evidence suggested that Rumizen had believed that someone else would report him if he failed to do so.

**{¶ 12}** Although the parties stipulated that Rumizen's diagnosed mental-health disorder qualified as a mitigating factor, the board found the causal connection between the disorder and his underlying misconduct "to be thin, at best." Therefore, Rumizen's mental-health disorder does not qualify as a mitigating factor under Gov.Bar R. V(13)(C)(7) (permitting the existence of a disorder to be considered a mitigating factor only if certain conditions are met, including "[a] determination that the disorder contributed to cause the misconduct"). The board nonetheless noted that Rumizen is currently working with the Ohio Lawyers

Assistance Program ("OLAP") and that his "demonstrated sincerity and commitment to continuing his mental health treatment is a positive factor in assessing [his] ability to ethically practice law going forward."

**{¶ 13}** During the disciplinary proceedings, Rumizen argued in favor of a conditionally stayed two-year suspension and cited *Disciplinary Counsel v. Pfundstein*, 128 Ohio St.3d 61, 2010-Ohio-6150, 941 N.E.2d 1180, and *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, in support of that proposed sanction. In *Pfundstein*, we imposed a conditionally stayed one-year suspension on an attorney who neglected two matters for the same client and then repeatedly lied to the client about the status of those matters to conceal his neglect. In *Edwards*, we imposed a conditionally stayed two-year suspension on an attorney who misappropriated $69,500 from his client trust account over a 17-month period.

**{¶ 14}** The board found—and we agree—that neither *Pfundstein* nor *Edwards* is particularly helpful in determining the appropriate sanction in this case. Rumizen's misconduct is more egregious than that in *Pfundstein* because Rumizen repeatedly falsified settlement documents and even forged his clients' signatures to essentially steal money from Kraig over a two-year period. And in *Edwards*, the attorney submitted evidence establishing a direct causal connection between his depressive symptoms and his ethical lapses. *Id.* at ¶ 14. Rumizen, however, failed to present such evidence.

**{¶ 15}** Instead, the board concluded that Rumizen's actions are more comparable to the misconduct in *Disciplinary Counsel v. Pickrel*, 151 Ohio St.3d 466, 2017-Ohio-6872, 90 N.E.3d 853, *Disciplinary Counsel v. Mahin*, 146 Ohio St.3d 312, 2016-Ohio-3336, 55 N.E.3d 1108, and *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571.

**{¶ 16}** *Pickrel* involved an attorney who knowingly overbilled a law firm by more than $87,000 over a four-year period. The board recommended a two-year

suspension, with one year stayed on conditions, to help ensure the attorney's continued compliance with her OLAP contract. Considering her lengthy pattern of dishonest and deceitful billing, among other factors, we accepted the board's recommendation. *Id.* at ¶ 15-17.

{¶ 17} *Mahin* and *Kraemer* similarly involved attorneys who stole money from their law firms, but the attorneys in those two cases also had been convicted of felony theft offenses. Specifically, the attorney in *Mahin* converted $15,262 of law-firm funds for his own personal use, and he fraudulently indorsed a client's name on a settlement check and then deposited those funds into his personal bank account. The attorney in *Kraemer* misappropriated $7,157 in attorney fees that belonged to his law firm. We suspended both attorneys for two years, with one year stayed on conditions. However, we also granted them credit for the time they had served under their interim felony suspensions, *Mahin* at ¶ 7; *Kraemer* at ¶ 15, which, in Kraemer's case, allowed him to immediately apply for reinstatement upon the issuance of our final disciplinary order.

{¶ 18} In light of this precedent, the board determined that an actual suspension is necessary in this case. However, the board also observed that Rumizen had submitted "strong mitigation evidence," he had not attempted to minimize his conduct, he had fully accepted responsibility for his actions, he had not been convicted of a crime, and no clients had been harmed by his misconduct. The board also emphasized that the three-member hearing panel was "impressed by [his] demeanor and forthrightness during his testimony." Recognizing that the primary purpose of a disciplinary sanction is to protect the public, not to punish the offender, the board recommended that we impose a two-year suspension, with 18 months stayed on conditions.

{¶ 19} As the board noted, "we have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d

857, at ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. With that purpose in mind and in consideration of the significant mitigating evidence in this case, we conclude that the board's recommended sanction is appropriate.

### Conclusion

{¶ 20} For the reasons explained above, Scott Andrew Rumizen is suspended from the practice of law for two years, with 18 months stayed on the conditions that he (1) remain compliant with his three-year OLAP contract, (2) remain in counseling with his treating psychologist and follow all recommendations of the psychologist, and (3) refrain from any further misconduct. If Rumizen violates any condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Rumizen.

Judgment accordingly.

KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

O'CONNOR, C.J., concurs in part and dissents in part and would impose a two-year suspension with 12 months stayed on conditions.

DONNELLY, J., not participating.

_____

Scott J. Drexel, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Koblentz & Penvose, L.L.C., Richard S. Koblentz, Bryan L. Penvose, and Nicholas E. Froning, for respondent.

_____