[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Bulson*, Slip Opinion No. 2020-Ohio-3001.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3001

COLUMBUS BAR ASSOCIATION *v.* BULSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Bulson*, Slip Opinion No. 2020-Ohio-3001.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed 18-month suspension.*

(No. 2019-1373—Submitted March 11, 2020—Decided May 21, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-025.

_____

**Per Curiam.**

{¶ 1} Respondent, Douglas Whitney Bulson Jr., of Columbus, Ohio, Attorney Registration No. 0020983, was admitted to the practice of law in Ohio in 1973. On December 2, 2005, we suspended his license for his failure to timely register for the 2005-2007 biennium, and we reinstated it ten days later. *In re Attorney Registration Suspension of Bulson*, 107 Ohio St.3d 1431, 2005-Ohio-

6408, 838 N.E.2d 671; *In re Bulson*, 107 Ohio St.3d 1705, 2006-Ohio-13, 840 N.E.2d 209.

{¶ 2} In an April 23, 2019 amended complaint, relator, Columbus Bar Association, charged Bulson with neglect of three client matters, improper client-trust-account management, and failure to cooperate in the ensuing disciplinary investigations. The parties entered into stipulations of fact and some misconduct and submitted 44 stipulated exhibits.

{¶ 3} At a July 17, 2019 hearing, a panel of the Board of Professional Conduct heard testimony from Bulson, his treating psychologist, and his daughter. Following that hearing, the board issued a report finding that Bulson committed all but two of the alleged rule violations and recommending that he be suspended from the practice of law for 18 months, fully stayed on conditions focused on maintaining his mental health.

{¶ 4} Relator objects to the board's recommendation, arguing (1) that Bulson has failed to demonstrate that his mental-health impairments have been mitigated and (2) that an actual suspension is necessary to protect his clients from additional acts of neglect.

{¶ 5} For the reasons that follow, we overrule relator's objection and adopt the board's findings of misconduct and recommended sanction.

## Misconduct

### Count One: The Pike Matter

{¶ 6} Following a motor-vehicle accident in August 2012, Valerie Pike retained Bulson to pursue a personal-injury claim and executed a one-third, contingent-fee agreement. Bulson filed a lawsuit on Pike's behalf in August 2014. He settled the matter for $7,500, and he deposited the proceeds into his client trust account on March 2, 2016. Several weeks later, Pike executed a settlement statement authorizing Bulson to make an initial distribution of $1,924.37 to her, to pay his $2,500 fee, and to retain $3,075.63 to settle her

2

subrogated medical bills and to pay a court-reporter fee. But Bulson did not take any action to resolve Pike's debts.

{¶ 7} In September and December 2016, Bulson cashed checks that he had issued to himself, dropping the balance of his client trust account to $2,750.64, where it remained through January 2018. He did not create or retain required client-trust-account records, and he did not respond to Pike's efforts to communicate with him regarding the status of her case. Approximately two weeks after Bulson's disciplinary hearing, he submitted evidence showing that he had paid the court reporter, settled and paid Pike's subrogated medical bills, and issued a $2,676.27 check to Pike.

{¶ 8} Bulson stipulated and the board found that his conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), and 1.15(a)(2), (3), and (5) (requiring a lawyer to maintain certain records regarding the funds held in the lawyer's trust account, perform monthly reconciliations of that account, and retain those records for a minimum of seven years).

*Count Two: The Hall Matter*

{¶ 9} In January 2016, Carla Hall hired Bulson to represent her in a juvenile-custody matter at a rate of $250 an hour and paid him an initial retainer of $1,500 plus $100 for the filing fee. Although Bulson should have deposited Hall's payment into his client trust account, to the best of his recollection, he cashed her check. By April 6, Bulson had spent 1.5 hours preparing several documents on Hall's behalf. Although he had her sign those documents, he did not file them and he performed no additional work on her case. He also failed to respond to her repeated efforts to communicate about the status of her case, and he did not honor her request for a refund until December 2018.

{¶ 10} Bulson stipulated and the board found that his conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment).

*Count Four: The Montgomery Matter*

{¶ 11} In June 2015, Teddy and Birdie Montgomery hired Bulson to represent them in a personal-injury case. After their first meeting with Bulson, the Montgomerys' telephone calls and text messages to Bulson often went unanswered and Bulson did not initiate any communication.

{¶ 12} In November 2017, the Montgomerys filed a grievance against Bulson with disciplinary counsel. In his initial response to that grievance in April 2018, Bulson disclosed that he had filed a lawsuit on the Montgomerys' behalf, but he had not yet perfected service on the defendant; he indicated that he would instruct the clerk of court to serve the complaint by ordinary mail, which he did in May 2018—approximately one year after he filed the lawsuit. After disciplinary counsel transferred the grievance to relator, relator ascertained that the Montgomerys were prepared to hire new counsel. Although relator asked Bulson to return the Montgomerys' file on multiple occasions, he produced only publicly available court documents, and he eventually reported that he was unable to locate their medical records or the only copy of their handwritten diary.

{¶ 13} Bulson stipulated and the board found that his conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), and 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest, including the prompt delivery of client papers and property).

*Counts Three and Five: Failure to Cooperate*

{¶ 14} Bulson stipulated that he did not timely respond to relator's letters of inquiry in the Pike, Hall, and Montgomery matters. He requested and received

two continuances before appearing for a deposition in December 2017, and a second deposition scheduled for April 26, 2018, was canceled due to his purported illness after he left a telephone message at the last minute. Although Bulson stipulated that his conduct with respect to the Pike and Hall matters violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), he did not stipulate that his conduct with respect to the Montgomery matter violated any rules. The board found that his failure to cooperate in relator's investigations constituted a single violation of Prof.Cond.R. 8.1(b) and unanimously dismissed two additional rule violations alleged in count five of relator's complaint.

{¶ 15} We adopt the board's findings of misconduct with respect to counts one through five of relator's complaint.

### Recommended Sanction

{¶ 16} When considering the appropriate sanction for Bulson's misconduct, the board considered all relevant factors, including the ethical duties that Bulson violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} The board found that five aggravating factors are present—prior discipline, a pattern of misconduct, multiple offenses, lack of cooperation in the disciplinary process prior to the filing of the amended complaint, and vulnerability and resulting harm to victims of the misconduct. *See* Gov.Bar R. V(13)(B)(1), (3), (4), (5), and (8). As for mitigating factors, the board found that Bulson had not acted with a dishonest or selfish motive, had exhibited a cooperative attitude toward the disciplinary proceeding after the amended complaint was filed (by entering into stipulations, appearing at the hearing, and expressing remorse), and had submitted evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(2), (4), and (5). Despite relator's arguments

to the contrary, the board also found that Bulson had met his burden of establishing the existence of a qualifying mitigating disorder pursuant to Gov.Bar R. V(13)(C)(7) through the testimony of his treating psychologist, Joseph W. Shannon III, Ph.D.

{¶ 18} The parties did not agree on a recommended sanction.

{¶ 19} The board found that Bulson's conduct most closely resembles the conduct at issue in two cases he cited to support his argument in favor of a fully stayed one-year suspension—*Disciplinary Counsel v. Brueggeman*, 128 Ohio St.3d 206, 2010-Ohio-6149, 943 N.E.2d 509, and *Disciplinary Counsel v. Oberholtzer*, 136 Ohio St.3d 314, 2013-Ohio-3706, 995 N.E.2d 217. Like Bulson, Brueggeman neglected several client matters, failed to reasonably communicate with the affected clients, and refused to cooperate in the resulting disciplinary investigations until after a formal complaint was filed against him. Although Brueggeman had engaged in a pattern of misconduct involving multiple offenses, we also found that he had no history of prior discipline and had exhibited no dishonest or selfish motive, cooperated in proceedings once the complaint was filed, submitted evidence of his good character and reputation, and established his diagnosed dysthymia as a mitigating factor. *Brueggeman* at ¶ 22, 25.

{¶ 20} Similarly, Oberholtzer engaged in a pattern of misconduct by neglecting two client matters, failing to promptly comply with the clients' reasonable requests for information, failing to deposit an unearned fee into his client trust account, and failing to cooperate in the early stages of the disciplinary proceedings against him. But mitigating factors included no prior discipline, absence of a selfish or dishonest motive, and Oberholtzer's eventual cooperation in the disciplinary proceedings. Oberholtzer also presented evidence that serious personal and family medical issues had affected his ability to properly represent his clients, and he expressed sincere remorse for his shortcomings.

{¶ 21} Despite the similarities between this case and *Brueggeman* and *Oberholtzer*, the board found that Bulson's conduct was sufficiently egregious to warrant a more severe sanction, at least in part because he waited until after his disciplinary hearing to pay Pike's bills and distribute the remaining proceeds of her settlement to her. Therefore, the board recommends that we suspend Bulson from the practice of law for 18 months, fully stayed on the conditions that he remain in treatment with Dr. Shannon, comply with the two-year mental-health contract he entered into with the Ohio Lawyers Assistance Program ("OLAP") in January 2019, serve a one-year period of monitored probation focused on his compliance with client-trust-account requirements, and engage in no further misconduct.

**Relator's Objection to the Board's Findings and Recommended Sanction**

{¶ 22} Relator objects to the board's determination that Bulson's major depression qualified as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7). Because relator believes that Bulson's mental health remains impaired, it asserts that he should be required to serve a period of actual suspension from the practice of law for some period of time to protect his clients from the risk of future harm.

{¶ 23} For a mental disorder to qualify as a mitigating factor under Gov.Bar R. V(13)(C)(7), a respondent must present evidence of (1) a diagnosis of the disorder by a qualified healthcare professional, (2) a determination that the disorder contributed to the misconduct, (3) a sustained period of successful treatment, and (4) a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, ethical, and professional practice of law under specified conditions.

{¶ 24} Here, relator contends that Bulson has failed to present sufficient evidence to establish that he has achieved a sustained period of successful treatment for his disorder and that he is currently capable of engaging in the competent, ethical, and professional practice of law. Relator asserts that the

board's report conflates the commencement of therapeutic interventions with the effective implementation of those interventions, and relator suggests that those therapies have not been proved effective—but that those or other proposed therapies *may* prove effective at some point in the future. In addition, relator asserts that there has been no showing that the support that Bulson's family has provided to help organize and maintain his law practice can be sustained over time. We disagree with relator's interpretation of the evidence.

{¶ 25} At Bulson's disciplinary hearing, Dr. Shannon testified that he had diagnosed Bulson with major depression with melancholia and severe attention-deficit disorder and that Bulson's depression had contributed to cause the misconduct at issue in this case. He also opined that Bulson had undergone a sustained period of successful treatment that included cognitive behavioral therapy and medication prescribed by a psychiatrist.

{¶ 26} Dr. Shannon reported that Bulson had been a model patient and very engaged in the therapeutic process. He also reported that Bulson's symptoms had improved—he was not as depressed and his sleep had improved significantly—and that getting more sleep had improved his energy and his abilities to focus and concentrate.

{¶ 27} Dr. Shannon further explained, "I believe that he's had a period now of at least a year where he has functioned at a much higher level and where his symptoms are much better controlled, at least I would say moderately better controlled, that he's functioning at a much higher level." And when asked whether he had an opinion about whether Bulson will be able to return to the competent, ethical, professional practice of law as required by Gov.Bar R. V(13)(C)(7)(d), Dr. Shannon responded, "If he's compliant with treatment, I feel very confident that he can do that."

{¶ 28} When asked what conditions he would place on Bulson's ability to practice competently and ethically, Dr. Shannon responded that Bulson should

continue his current course of treatment, obtain a second opinion about his medication protocol from Dr. David Scandinaro, and pursue screening to determine whether he is a candidate for several alternative therapies. Dr. Shannon explained that although Bulson's treating psychiatrist felt that his current treatment protocol was "as good as it is going to be," he personally believed that a more innovative psychiatrist like Dr. Scandinaro might be able help Bulson to obtain even more relief with fewer side effects. Contrary to relator's assertions, we find that the opportunity to pursue additional therapies that may one day prove more effective than Bulson's current course of treatment does not negate the sustained period of successful treatment that he has already achieved.

{¶ 29} In addition, the board noted that Bulson's family members have assisted him with his treatment and with the organization and management of his office. His son-in-law, a certified paralegal, has assisted him with organizing his office, updating his files, and meeting deadlines. Bulson's wife, a retired licensed social worker, communicates directly with Dr. Shannon about any changes in Bulson's behavior and has assisted him with his legal billing. And his daughter, a chiropractor, attends to Bulson's dietary needs to control another medical condition, and she has helped to organize his office. In addition to checking in on Bulson by telephone every day, she spends a couple of hours with him in his office a couple of days a week to assist with filing and other tasks. She testified that she "absolutely" plans to continue that practice on an ongoing basis and that she did not anticipate any changes in the frequency of her interactions with her father. Although relator questions whether Bulson's family can sustain those efforts over time, we find no reason to question their intention or ability to assist Bulson going forward. On these facts, we agree that Bulson has established his diagnosed major depression as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).

**{¶ 30}** Relator maintains that regardless of whether Bulson's mental disorder is a mitigating factor, a one-year suspension from the practice of law, with no stay and with conditions on reinstatement, is necessary to protect his clients from further neglect. In support of that recommendation, relator cites *Lorain Cty. Bar Assn. v. Weir*, 156 Ohio St.3d 566, 2019-Ohio-2151, 130 N.E.3d 275, and *Disciplinary Counsel v. Rumizen*, 156 Ohio St.3d 575, 2019-Ohio-2519, 130 N.E.3d 283.

**{¶ 31}** In *Weir*, we imposed a one-year suspension with the final six months conditionally stayed on an attorney who had engaged in misconduct comparable to Bulson's by neglecting two client matters, failing to reasonably communicate with clients, failing to deliver funds and other property to a client upon the termination of his representation, and failing to cooperate in a disciplinary investigation. And in *Rumizen*, we imposed a two-year suspension with 18 months conditionally stayed on an attorney who had engaged in a pattern of dishonesty to deprive another attorney of fees to which the attorney was entitled under a fee-sharing arrangement. Although we have long recognized that a course of conduct involving dishonesty warrants an actual suspension from the practice of law, *see, e.g.*, *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 191, 658 N.E.2d 237 (1995), Bulson has neither been charged with nor found to have engaged in dishonest conduct.

**{¶ 32}** In rejecting relator's proposed sanction below, the board distinguished *Weir* and *Rumizen* from this case on the ground that *Weir* and *Rumizen* did not involve findings of a mental-health disorder contributing to the misconduct. While Rumizen attempted and failed to establish the existence of a mitigating mental-health disorder, the only suggestion in the board's report or our decision that Weir may have suffered from a mental-health disorder was our order that he submit to an OLAP assessment and comply with all treatment

recommendations as part of his sanction.  *See Weir* at ¶ 28.  We find that the board's distinction is sound.

{¶ 33} Based on the foregoing, we find that Bulson has established his major depression as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).  And having weighed Bulson's misconduct, the aggravating and mitigating factors found by the board, and the precedent cited by both parties, we are persuaded that an 18-month suspension, fully stayed on the conditions recommended by the board—with the additional conditions that he (1) waive the doctor-patient privilege with respect to each of his healthcare professionals to permit relator to verify that his disorder has stabilized with treatment and (2) meet with his practice monitor once a month or more frequently if the monitor deems it necessary—will best support Bulson's mental-health recovery and protect his clients from future harm.

**Conclusion**

{¶ 34} Accordingly, we overrule relator's objection to the board's findings and recommended sanction and suspend Douglas Whitney Bulson Jr. from the practice of law for 18 months, fully stayed on the conditions that Bulson (1) continue to participate in mental-health treatment with Dr. Joseph W. Shannon III at an interval directed by Dr. Shannon and comply with all treatment recommendations, (2) waive the doctor-patient privilege with respect to each of his healthcare professionals to permit relator to verify that Bulson's disorder has stabilized with treatment, (3) remain in compliance with his OLAP contract, (4) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) focused on his compliance with the rules governing proper client-trust-account management, (5) meet with his practice monitor once a month or more frequently if the monitor deems necessary, and (6) engage in no further misconduct.  If Bulson fails to comply with any of these conditions, the stay will

be lifted and he will serve the full 18-month suspension. Costs are taxed to Bulson.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

_____

Kent R. Markus, Bar Counsel; Bricker & Eckler, L.L.P., and Randolph C. Wiseman; and John B.C. Porter, for relator.

Montgomery Jonson, L.L.P., George D. Jonson, and Lisa M. Zaring, for respondent.

_____