**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Berling*, **Slip Opinion No. 2020-Ohio-2838.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2838

TOLEDO BAR ASSOCIATION *v.* BERLING.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. Berling*, Slip Opinion No. 2020-Ohio-2838.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client—Two-year suspension.*

(No. 2019-1743—Submitted January 29, 2020—Decided May 12, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-012.

_____

**Per Curiam.**

{¶ 1} Respondent, Mark David Berling, of Toledo, Ohio, Attorney Registration No. 0002444, was admitted to the practice of law in Ohio in 1983.  On March 26, 2020, in a separate disciplinary case, we entered an interim remedial

order immediately suspending Berling's license pursuant to Gov.Bar R. V(19)(B). *Toledo Bar Assn. v. Berling*, ___ Ohio St.3d ___, 2020-Ohio-1111, ___ N.E.3d ___.

{¶ 2} In the underlying matter, relator, Toledo Bar Association, charged Berling with committing professional misconduct in eight client matters. Although Berling entered into some stipulations of fact and admitted to a few of the misconduct charges, he mostly denied that his actions violated the Rules of Professional Conduct. After a hearing, a three-member panel of the Board of Professional Conduct found that Berling had committed most of the charged misconduct, dismissed some of the alleged rule violations, and recommended that we suspend his license for two years and order that he pay restitution to seven former clients. The board issued a report adopting the panel's findings of misconduct and recommended sanction, and neither party has objected to the board's report.

{¶ 3} Based on our independent review of the record, we agree with the board's findings of misconduct and recommended sanction.

## Misconduct

### Count one—the Lowder matter

{¶ 4} In August 2014, Pamela Lowder retained Berling to assist her in an action against a home contractor. Although Berling agreed to represent Lowder on a contingent-fee basis, he failed to provide her with a written fee agreement. He also failed to deposit her $1,000 retainer into his client trust account.

{¶ 5} Almost a year later, Lowder met with Berling and discovered that he had not taken any action in her case. Upon Berling's request, Lowder gave him additional money for filing fees, although Berling never negotiated her check. According to Lowder, she thereafter attempted to meet or speak with Berling but he canceled appointments or failed to return her phone calls. He never filed a lawsuit on her behalf.

{¶ 6} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer), and 1.15 (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property). The board also determined that Berling owes Lowder $1,000 in restitution.

*Count two—the Wilson matter*

{¶ 7} In 2017, Jennifer Wilson retained Berling to represent her in a divorce case. In early January 2018, she completed and sent him forms necessary to apply for child support, and over the following three weeks, she sought an update on the status of the application. For example, on January 11, she sent Berling a text message asking whether he had filed the child-support forms and he responded that he would file them later that day. She sent him similar text messages throughout the following week and received varying responses or no response at all from Berling. On January 22, Berling sent Wilson a text message stating "All set," which she interpreted to mean that he had filed the child-support forms. But on January 30, after several follow-up texts from Wilson, Berling told her that he had given the forms to his assistant. Berling had not properly trained the assistant, who failed to file the forms.

{¶ 8} On February 1, Wilson discovered that nothing had been filed in her case for months. She thereafter sent Berling a text message stating that she was meeting with another attorney and requesting that he sign a substitution-of-counsel form. Berling failed to respond to Wilson's message or to promptly return the form, despite subsequent requests from Wilson's new counsel. After Wilson indicated her intention to report Berling's conduct to relator, he stated that he would hand-deliver her file to her new attorney the next day. About two weeks later, Berling

delivered the file, which contained only documents filed by Wilson's ex-husband and a few documents that Berling had prepared but never served or filed.

{¶ 9} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3, 1.4(a)(3), and 5.3(b) (requiring a lawyer to make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer). The board also determined that Berling owes Wilson restitution in the amount of $1,000, which was the amount she had requested in her grievance.

*Count three—the Heaton matter*

{¶ 10} In 2013, Brian Heaton paid Berling $5,000 to file a Civ.R. 60(B) motion to vacate a child-support order in Heaton's divorce case. Despite e-mails and text messages from Heaton, Berling did not file the motion until more than two years later, in August 2015.

{¶ 11} The court scheduled a hearing on the motion for January 14, 2016. The day before the hearing, Berling moved for a continuance and told Heaton that he intended to dismiss the Civ.R. 60(B) motion because Berling was involved in another trial and was not prepared for the hearing. Heaton reluctantly agreed to Berling's plan, relying on Berling's assurances that the dismissal would be without prejudice and that he would be able to refile the motion. Berling also advised Heaton that Heaton need not appear for the hearing.

{¶ 12} The court, however, denied Berling's motion for a continuance and his oral motion to dismiss without prejudice. Berling did not introduce any evidence at the hearing, and the court overruled Heaton's Civ.R. 60(B) motion with prejudice, in part because it had not been timely filed.

{¶ 13} Earlier in the case, the parties had reached a partial agreement on several issues, and although Berling was directed to prepare a consent judgment entry, he failed to do so. In February 2016, Berling advised the court that he was withdrawing from the representation and that he would file the overdue entry the

next day. But Berling failed to file the entry, resulting in a magistrate's entering an order sua sponte. According to Heaton, the magistrate's order included terms that he had not previously agreed to.

{¶ 14} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3 and 1.4(a)(3). The board also found that Berling owes Heaton $5,000 in restitution.

*Count four—the Mirra matter*

{¶ 15} In early 2017, Kristen Mirra paid Berling a $5,000 retainer to represent her in a divorce action already pending in Monroe County, Michigan. Although Berling was not licensed to practice law in Michigan, he advised Mirra that he would file a pro hac vice motion for temporary admission to that state's bar and affiliate himself with a Michigan-licensed attorney. Berling also assured Mirra he would not charge her for two attorneys. He asked Salvatore Molaro Jr., an attorney licensed in both Ohio and Michigan, to assist him in Mirra's divorce.

{¶ 16} In February 2017, Berling sent Mirra a text message indicating that his pro hac vice motion was "[a]ll done" and would be filed in the Michigan court the following day. Berling, however, never filed a pro hac vice motion.

{¶ 17} In May and June 2017, Molaro sent Berling two letters identifying several uncompleted tasks for the scheduled June 29 trial and requesting that Mirra stop by his office to discuss his fees. Berling failed to send those letters to Mirra. In mid-June, Molaro sent Berling another letter stressing how unprepared they were for Mirra's trial and again noting that she had not yet paid him.

{¶ 18} Berling appeared at a June 14 hearing in Mirra's case and for a June 22 mediation and final pretrial hearing. After the final pretrial, Molaro advised Mirra that he would not represent her at trial due to their failure to reach an agreement on his fees. Because Berling had failed to secure temporary admission to the Michigan bar, Mirra was forced to obtain new counsel less than one week before her scheduled trial. After she found a new attorney, she requested that

Berling deliver her case file to him, but Berling did not do so until three days before trial. According to Mirra's new attorney, the file was extremely disorganized.

{¶ 19} In addition, during the representation, Berling sent Mirra multiple text messages that were sexual in nature, including messages in which he solicited sexual activity from her.

{¶ 20} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3, 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished), 1.4(a)(3), 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, the board concluded that Berling owes Mirra restitution in the amount of $16,500, which includes the $5,000 retainer she had paid Berling and her initial payment of $11,500 to the new attorney she hired just prior to her trial.

*Count five—the McBryde matter*

{¶ 21} In February 2018, Sylvanus McBryde retained Berling to represent him in a custody action and advised Berling of an upcoming March 6 hearing. Berling quoted McBryde a $250 hourly rate, and McBryde paid him $1,000, none of which Berling deposited into his client trust account.

{¶ 22} Berling subsequently advised McBryde that Berling had to request a continuance of the March 6 hearing. Berling, however, failed to file a motion, and McBryde appeared for the hearing on his own to obtain the continuance. When McBryde later texted Berling to remind him of the rescheduled hearing, Berling requested an additional $2,500 to proceed with the case. McBryde terminated the representation and demanded a refund. A fee-dispute arbitrator found that Berling

had not completed any work on the case and ordered him to return McBryde's $1,000 retainer, which Berling eventually repaid.

{¶ 23} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3, 1.4(a)(3), and 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses are incurred).

*Count six—the Sleek matter*

{¶ 24} In 2016, Carolyn Sleek retained Berling to represent her in a domestic-relations dispute and through 2017, paid him more than $5,000, none of which he deposited into his client trust account.

{¶ 25} In 2017 and 2018, Berling requested continuances of two pretrial hearings and four scheduled trials due to claimed health problems. Berling, however, produced medical documentation supporting only one of those requested continuances. He also canceled a settlement conference at the last moment due to his grandmother's health. In August 2018, a magistrate concluded that Berling was impeding the case's resolution and removed him as Sleek's counsel. In January 2019, a fee-dispute arbitrator awarded Sleek a partial refund of $2,500, concluding that Berling had not presented any billing records or documentation recording the time he had spent on her case. At the time of Berling's disciplinary hearing, he had not yet paid any of Sleek's arbitration award.

{¶ 26} Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3, 1.15(c), 8.4(c), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board also noted that Berling continues to owe Sleek $2,500 in restitution.

*Count seven—the Saenz matter*

{¶ 27} In January 2019, Martha Lemus hired Berling to represent her son, Cesar Saenz, in a criminal matter. Lemus gave Berling an initial payment of $500, and he appeared in court on her son's behalf and obtained his release from jail.

**{¶ 28}** About a week later, Saenz paid Berling another $1,000, which Berling did not deposit into his client trust account. Berling failed to appear at Saenz's next two scheduled court hearings, resulting in Saenz's requesting a refund. Although Berling initially agreed to return some of the money, he canceled three meetings with Saenz. Berling also told Lemus that he would mail her the refund, but he never did so.

**{¶ 29}** Based on this conduct, the board found that Berling committed additional violations of Prof.Cond.R. 1.3, 1.15(c), and 8.4(d). The board also concluded that Berling owes Saenz $1,000 in restitution.

*Count eight—the Huth matter*

**{¶ 30}** In 2016, Julie Huth retained Berling to represent her in a divorce action. She paid him a total of $3,200, none of which he deposited into his client trust account.

**{¶ 31}** In March 2017, the parties agreed that Huth would receive a certain amount from her husband's retirement account. When the husband's counsel presented a draft entry reflecting the parties' purported agreement, Huth claimed that her allotted amount had been reduced. Berling assured Huth that he would address the discrepancy and have her sign a revised entry. Berling, however, failed to follow through. Instead, opposing counsel revised the draft again, further reducing Huth's allotted share of the retirement account. And because Berling failed to send the draft entry to Huth or to object to it, the court adopted the entry. Huth requested that Berling rectify the discrepancy, but Berling waited nine and a half months to file a motion, which the court denied as untimely.

**{¶ 32}** Based on this conduct, the board found that Berling violated Prof.Cond.R. 1.3 and 1.15(c). In addition, the board found that because Berling had performed minimal legal work for Huth, he owes her $3,200 in restitution.

**{¶ 33}** We agree with the board's findings of misconduct in counts one through eight.

**Sanction**

{¶ 34} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 35} The board found that six of the nine aggravating factors listed in Gov.Bar R. V(13)(B) are present: Berling acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses (27 ethical-rule violations in eight client matters), refused to acknowledge the wrongful nature of his conduct, caused harm to vulnerable clients, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (7), (8), and (9). As an additional aggravating factor, the board noted that Berling admitted that he had failed to properly notify clients that he lacked malpractice insurance. The board also noted that although Berling had technically acknowledged that much of his conduct was inappropriate, he had attempted to minimize some of his behavior or shift blame to his clients and others. He also had tried to justify his actions by offering certain medical and social conditions as excuses, which the panel concluded showed a lack of sincerity and remorse. "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 36} In mitigation, the board found that Berling has a clean disciplinary record, had exhibited a cooperative attitude toward the disciplinary proceedings, and had submitted evidence of his good reputation and competency as an attorney. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). Although Berling had submitted evidence attempting to show that he suffered from mental and physical disorders, the board correctly found that none of those conditions qualified as a mitigating factor under Gov.Bar R. V(13)(C)(7).

{¶ 37} To support its recommended sanction, the board cited a number of cases involving attorneys who engaged in similar patterns of misconduct. For example, the board first reviewed *Disciplinary Counsel v. Delay*, 157 Ohio St.3d 137, 2019-Ohio-2955, 132 N.E.3d 680, in which an attorney accepted fees from several clients and then failed to perform the agreed-upon work, failed to respond to those clients' efforts to contact him, failed to deposit unearned fees into his client trust account, and engaged in dishonest conduct. Unlike Berling, however, the attorney in *Delay* also failed to cooperate in the ensuing disciplinary investigations and submitted a fraudulent document to the relator. Eight of the nine aggravating factors enumerated in Gov.Bar R. V(13)(B) but only one mitigating factor were present in *Delay*. Noting that the attorney was "unrepentant and unremorseful" about his misconduct, we indefinitely suspended him. *Id.* at ¶ 33, 43.

{¶ 38} The board also considered cases in which we imposed a lesser sanction of a two-year suspension with a portion stayed, including *Cleveland Metro. Bar Assn. v. Gresley*, 127 Ohio St.3d 430, 2010-Ohio-6208, 940 N.E.2d 945 (suspending an attorney for two years, with six months conditionally stayed, for misconduct that included accepting fees from numerous clients but then failing to perform the agreed-upon work, failing to respond to his clients' efforts to contact him, and failing to cooperate in the disciplinary investigation), *Disciplinary Counsel v. Hall*, 131 Ohio St.3d 222, 2012-Ohio-783, 963 N.E.2d 813 (suspending an attorney for two years, with six months stayed, for misconduct that included accepting retainers from numerous clients but then failing to perform the agreed-upon work, failing to respond to his clients' efforts to reach him, and dishonesty), and *Disciplinary Counsel v. Turner*, 154 Ohio St.3d 322, 2018-Ohio-4202, 114 N.E.3d 174 (suspending an attorney for two years, with six months conditionally stayed, for misconduct that included neglecting two of a client's matters, engaging in a sexual relationship with that client, and misusing his client trust account).

**{¶ 39}** The board concluded that Berling's misconduct was less egregious than that in *Delay* but more concerning than that in *Gresley*, *Hall*, and *Turner*. And considering that Berling has yet to fully take responsibility for his actions, the board recommends an actual two-year suspension with conditions on reinstatement as well as an order requiring Berling to make restitution.

**{¶ 40}** We accept the board's recommendation. Berling not only engaged in a pattern of neglecting client matters and failing to return unearned fees but also sent improper sexual text messages to a client, attempted to practice law in a jurisdiction in which he was not admitted, and repeatedly failed to deposit clients' unearned fees into his trust account. The record, the balance of the aggravating and mitigating factors, and our applicable precedent all support a two-year suspension, without any portion stayed.

### Conclusion

**{¶ 41}** Mark David Berling is hereby suspended from the practice of law in Ohio for two years. Within 90 days of our disciplinary order, Berling shall make restitution as follows: $1,000 to Pamela Lowder, $1,000 to Jennifer Wilson, $5,000 to Brian Heaton, $16,500 to Kristen Mirra, $2,500 to Carolyn Sleek, $1,000 to Cesar Saenz, and $3,200 to Julie Huth. In addition to the requirements of Gov.Bar R. V(24), Berling's reinstatement is conditioned upon his providing (1) proof that he submitted to an evaluation by the Ohio Lawyers Assistance Program and complied with any counseling or treatment recommendations resulting from that evaluation and (2) an opinion from a qualified healthcare professional that Berling is able to return to the competent, ethical, and professional practice of law. Costs are taxed to Berling.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

————————————

Liebenthal and Levine, Ltd., and Margaret Mattimoe Sturgeon; Brady, Coyle & Schmidt, Ltd., and Margaret G. Beck; and Joseph P. Dawson, Bar Counsel, for relator.

Martin E. Mohler, for respondent.

_____