**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Bulson*, **Slip Opinion No. 2023-Ohio-4258.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4258

COLUMBUS BAR ASSOCIATION *v*. BULSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Bulson*, Slip Opinion No. 2023-Ohio-4258.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Suspension for 18 months with 12 months conditionally stayed.*

(No. 2023-0470—Submitted June 27, 2023—Decided November 30, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-032.

_____

**Per Curiam.**

{¶ 1} Respondent, Douglas W. Bulson Jr., of Columbus, Ohio, Attorney Registration No. 0020983, was admitted to the practice of law in Ohio in 1973.

{¶ 2} In December 2005, we suspended Bulson's license after he failed to timely register as an attorney for the 2005-2007 attorney-registration biennium, and we reinstated it ten days later.  *See In re Attorney Registration Suspension of*

*Bulson*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671, *reinstatement granted*, 107 Ohio St.3d 1705, 2006-Ohio-13, 840 N.E.2d 209. In May 2020, we found that Bulson had neglected three client matters, failed to reasonably communicate with those clients, improperly managed his client trust account, failed to return unearned fees and property to his clients, and failed to cooperate in the ensuing disciplinary investigations. *Columbus Bar Assn. v. Bulson*, 160 Ohio St.3d 208, 2020-Ohio-3001, 155 N.E.3d 843, ¶ 6-15. We imposed a conditionally stayed 18-month suspension for that misconduct. *Id.* at ¶ 34.

**{¶ 3}** In a September 2022 amended complaint, relator, Columbus Bar Association, alleged that Bulson had committed multiple ethical violations by (1) neglecting a client's legal matter for more than nine years, (2) failing to reasonably communicate with the client, and (3) failing to comply with a prior order of this court. The parties entered into stipulations of fact.

**{¶ 4}** The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel heard testimony from Bulson and two other witnesses and admitted 26 exhibits—20 of which were stipulated to by the parties. At the close of the evidence, the panel unanimously dismissed the third count of relator's amended complaint.

**{¶ 5}** The panel issued a report finding that Bulson had committed the misconduct alleged in the first two counts of relator's amended complaint and recommending that he be suspended from the practice of law for 18 months with 12 months stayed, that conditions be placed on his reinstatement, and that upon reinstatement he be required to serve a one-year period of monitored probation. The panel rejected relator's request for a recommendation that Bulson be ordered to pay restitution to his client. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 6}** Relator objects to the board's recommendation that no restitution be awarded in this case and to a procedural ruling regarding the appropriate role of bar

counsel in litigating disciplinary proceedings to the hearing panel. For the reasons that follow, we overrule relator's objections and adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

{¶ 7} Bulson represented Amy Shepherd[1] in a Madison County domestic-relations case. On January 8, 2013, the domestic-relations court issued an agreed judgment entry ordering Shepherd's former husband to execute a qualified domestic relations order ("QDRO") to be prepared by Bulson that would effectuate the transfer of $19,427 to Shepherd from her former husband's 401(k) account.

{¶ 8} Bulson did not take the necessary actions to finalize the QDRO for more than eight years notwithstanding Shepherd's frequent inquiries and attempts to contact him. In April 2021, he promised Shepherd that the QDRO would be finalized within 30 days. After making that commitment, Bulson did not accept or return Shepherd's phone calls.

{¶ 9} Shepherd filed a grievance with relator in June 2021 which relator forwarded with a letter of inquiry to Bulson in August. In his October 2021 written response, Bulson acknowledged his delay in preparing the QDRO, described his recent but unsuccessful efforts to recover computer files regarding the matter, and stated that "the next step is to submit the draft QDRO to the pension administrator for pre-approval." He stated that he expected the approval process to "take up to thirty days" and that once he received it, he would send the original QDRO to opposing counsel for the required signatures and then file the document with the court. But at the time Bulson offered that explanation to relator, he had not yet submitted the QDRO to the pension administrator for preapproval.

{¶ 10} In April 2022, the domestic-relations-court judge signed and entered the QDRO assigning Shepherd $19,427 of her former husband's vested account

---

1. Shepherd has since remarried and is now known as Amy Maggard.

balance. Nearly a month later, the pension administrator acknowledged receipt of the QDRO and informed Bulson that it would review the order to confirm that the QDRO qualified. The money was finally transferred to Shepherd in November 2022—more than nine years after the domestic-relations court awarded $19,427 to her.

{¶ 11} During Bulson's disciplinary hearing, Shepherd testified that over the nine years that Bulson had represented her, he hardly ever returned her phone calls and that she had seldom received substantive responses to the emails she sent him.

{¶ 12} The board found by clear and convincing evidence that Bulson had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information).

## RECOMMENDED SANCTION

{¶ 13} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} Three aggravating factors are present in this case: (1) Bulson's prior discipline, (2) his pattern of misconduct over a period of years, and (3) the vulnerability of and resulting harm to Shepherd. *See* Gov.Bar R. V(13)(B)(1), (3), and (8). Mitigating factors consist of the absence of a dishonest or selfish motive and Bulson's full and free disclosure to the board and cooperative attitude toward the proceedings. *See* Gov.Bar R. V(13)(C)(2) and (4).

**{¶ 15}** In determining the appropriate sanction for Bulson's misconduct, the board considered seven cases in which we imposed term suspensions of varying lengths, some of which were stayed in full or in part on various conditions. *See, e.g.*, *Disciplinary Counsel v. Hillman*, 168 Ohio St.3d 160, 2022-Ohio-447, 197 N.E.3d 503 (imposing a conditionally stayed two-year suspension on an attorney— with prior discipline for conduct unrelated to his clients—who failed to keep a client reasonably informed about the status of a matter and failed to diligently comply with proper discovery requests); *Disciplinary Counsel v. Barbera*, 165 Ohio St.3d 502, 2021-Ohio-2209, 180 N.E.3d 1056 (imposing an 18-month suspension with 12 months conditionally stayed on a previously disciplined attorney who neglected a client's legal matter, failed to comply with the client's reasonable requests for information, and failed to promptly deliver the client's property on the termination of his representation); *Lorain Cty. Bar Assn. v. Lewis*, 164 Ohio St.3d 147, 2021-Ohio-805, 172 N.E.3d 139 (imposing a two-year suspension with no stay on an attorney twice disciplined for dishonest conduct who failed to communicate with and diligently represent a client in a domestic-relations matter).

**{¶ 16}** The board found that the facts of this case are most analogous to those of *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481. Like Bulson, Engel neglected a single client matter, failed to keep the client reasonably informed about the status of her legal matter and to comply with her reasonable requests for information, and had previously been disciplined for similar misconduct. *Id.* at ¶ 2-3, 6. Engel also engaged in additional misconduct by failing to promptly refund his unearned $500 retainer and failing to cooperate in the resulting disciplinary investigation. *Id*. at ¶ 7-8. We suspended Engel from the practice of law for two years with 18 months stayed on the condition that he engage in no further misconduct, placed conditions on his reinstatement to the profession related to his mental health, and on reinstatement to the practice of law ordered him to serve a two-year period of monitored probation. *Id*. at ¶ 31-33. Although the

board acknowledged that Engel's misconduct was broader in scope than Bulson's, it noted that Bulson's misconduct occurred over a much longer period of time and caused significant harm to his client who was deprived of $19,427 for more than nine years.

{¶ 17} Recognizing that the fully stayed suspension we imposed for Bulson's prior misconduct did not adequately protect the public, the board concluded that Bulson's misconduct in this case warrants a period of actual suspension. It therefore recommends that we suspend Bulson from the practice of law for 18 months with 12 months stayed. The board further recommends that Bulson's reinstatement be conditioned on his completion of three hours of continuing legal education ("CLE") in addition to the requirements of Gov.Bar R. X and focused on law-office management, and that upon reinstatement he be required to serve a one-year period of monitored probation. Neither party objects to the board's findings of misconduct or the recommended sanction. After a thorough review of the record and our applicable precedent, we adopt the board's findings of misconduct and the recommended sanction.

## RESTITUTION IS NOT APPROPRIATE IN THIS CASE

{¶ 18} During the panel hearing, relator argued that Bulson should be ordered to pay restitution to compensate Shepherd for the nine years of investment income she lost on the QDRO settlement as a result of Bulson's neglect. To that end, relator presented the testimony of a financial advisor and three exhibits demonstrating the growth that Shepherd's $19,427 QDRO settlement could have generated from September 1, 2013, through December 31, 2022, had the QDRO settlement been timely transferred to Shepherd and deposited into one of five different investment funds that employed different investment strategies ranging from conservative to aggressive. The financial advisor offered an exhibit showing that if Shepherd's QDRO settlement had been placed in one of those funds, Shepherd would have earned at least $7,917.70 and as much as $34,748.76.

**{¶ 19}** In its report, the board noted that during closing argument, relator's counsel was asked for a precise restitution figure and that she stated in response: "Our hope was that by providing you [with] highs and lows—aggressive, very conservative, and somewhere in between—that you would end up somewhere in between. It's hard to say what [Shepherd] would have invested in." The board stated that "[r]elator could have questioned Shepherd about her investment strategy or how she may have invested the [QDRO settlement] had [it] been provided to her in a more timely fashion" and that relator "could have questioned Shepherd about the amount of legal fees she [had] paid to [Bulson] as a further means of establishing a restitution figure." But the board found that no evidence was presented to the panel on those issues. Although Shepherd testified that she would have rolled the QDRO settlement into her employment 401(k) plan if she had timely received it, relator offered no evidence regarding the historical performance of that plan.

**{¶ 20}** The board found that the evidence of "damages [or] restitution" based on lost investment income was "speculative at best and a more proper subject of a civil malpractice action." And it concluded that "[a]bsent any clear and convincing evidence on [the amount of lost investment income] or the restitution that is more typically ordered in a disciplinary matter (*e.g.*, unearned legal fees), [it was] unable to recommend that [Bulson] be required to make restitution."

**{¶ 21}** Relator objects to the board's failure to recommend that Bulson be required to make restitution to Shepherd despite having acknowledged that Bulson's misconduct harmed Shepherd by depriving her of access to the QDRO settlement for many years. Yet relator offers no citation to any attorney-discipline case in which this court has ever made such an award—and we have not found any in our research. Furthermore, we are not convinced that the remedy relator seeks is truly restitution.

**{¶ 22}** Restitution "is a remedy 'in which the measure of recovery is usu[ally] based not on the plaintiff's loss, but on the defendant's gain.' " (Brackets sic.) *Cirino v. Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 26, quoting *Black's Law Dictionary* 1507 (10th Ed.2014). This definition comports with our practice of awarding restitution to clients adversely affected by an attorney's misconduct. Those awards of restitution—as the board acknowledged in its report—generally consist of an order that the attorney return unearned fees or retainers, though they may also consist of fees that have been determined to have been clearly excessive, or funds that the attorney has received on behalf of a client or others but failed to disburse. *See, e.g.*, *Toledo Bar Assn. v. Berling*, 160 Ohio St.3d 90, 2020-Ohio-2838, 153 N.E.3d 83 (ordering attorney to make restitution of unearned fees totaling $30,200 to seven clients); *Columbus Bar Assn. v. Kizer*, 123 Ohio St.3d 188, 2009-Ohio-4763, 915 N.E.2d 314 (ordering attorney to make restitution of unearned fees to four clients); *Medina Cty. Bar Assn. v. Buzzelli*, 168 Ohio St.3d 661, 2022-Ohio-2470, 200 N.E.3d 1097 (ordering attorney to pay restitution of $7,860 to client for work that was not performed but that was billed in an attempt to justify retention of the client's entire $15,000 retainer); *Akron Bar Assn. v. Carr*, 131 Ohio St.3d 210, 2012-Ohio-610, 963 N.E.2d 802 (finding that attorney charged a clearly excessive fee by collecting $6,750 in payments from his client and retaining $7,250 of the $7,500 settlement he negotiated on his client's behalf and ordering the attorney to make restitution of $7,250); *Disciplinary Counsel v. Darling*, 167 Ohio St.3d 382, 2022-Ohio-870, 192 N.E.3d 487 (ordering an attorney to make restitution of $8,835 to client's chiropractor after the attorney misappropriated personal-injury-settlement funds that had been earmarked to pay the chiropractor's bill for the client's treatment).

**{¶ 23}** In this case, relator has characterized its desired remedy as *restitution*, but it does not seek to prevent Bulson from being unjustly enriched. Rather, relator seeks an award of *damages* to compensate Shepherd for the financial

8

harm that Bulson's misconduct has caused her. *See, e.g.*, *Black's* at 471 (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). While relators in attorney-discipline proceedings are authorized to seek *restitution* that may be owed to persons affected by an attorney's misconduct, *see* Gov.Bar R. V(10)(E)(1)(b), no rule authorizes them to seek *damages* on behalf of persons harmed by an attorney's misconduct.

{¶ 24} On occasion, we have required disciplined attorneys to make "restitution" of amounts equal to the judgment entered against them or the settlement agreed to by them in legal-malpractice actions directly related to their misconduct. *See, e.g.*, *Disciplinary Counsel v. Ferfolia*, 170 Ohio St.3d 468, 2022-Ohio-4220, 214 N.E.3d 554 (ordering an attorney to pay the balance of the default judgment entered against him in his former clients' legal-malpractice action as a condition of his stayed suspension); *Disciplinary Counsel v. Corley*, 160 Ohio St.3d 324, 2020-Ohio-3303, 156 N.E.3d 882 (ordering an attorney to make restitution to a former client of an amount almost equal to the judgment entered against him after he breached the settlement of a legal-malpractice action filed by the former client); *Warren Cty. Bar Assn. v. Brenner*, 159 Ohio St.3d 367, 2020-Ohio-142, 151 N.E.3d 546 (ordering attorney to make restitution to former client in amount of default judgment entered against attorney in legal-malpractice action); *Lake Cty. Bar Assn. v. Troy*, 130 Ohio St.3d 110, 2011-Ohio-4913, 955 N.E.2d 1007 (ordering an attorney to pay restitution equal to the amount of the legal-malpractice judgment against him); *Disciplinary Counsel v. Freeman*, 51 Ohio St.3d 98, 554 N.E.2d 1320 (1990) (ordering an attorney to make restitution to a client in the amount he agreed to pay in settlement of the client's legal-malpractice action against him).

{¶ 25} As part of the sanction in each of those cases, we ordered the disciplined attorney to comply with a lawful judgment issued against that attorney in a separate proceeding initiated by the attorney's aggrieved clients, in which the aggrieved clients had had an opportunity to present evidence regarding the full

nature and extent of their damages occasioned by the attorney's misconduct.[2] However, aggrieved clients like Shepherd are not parties to and have no opportunity to independently present evidence in an attorney-discipline proceeding. Nor are relators who are charged with investigating and prosecuting allegations of attorney misconduct the proper parties to make those arguments on behalf of the aggrieved clients. Simply stated, an attorney-discipline proceeding is not a proper substitute for a legal-malpractice action.

{¶ 26} In the absence of a legal-malpractice judgment against Bulson, the board properly rejected relator's request for an award of damages to compensate Shepherd for the financial harm that Bulson's misconduct has caused her. Therefore, relator's first objection is overruled.

## DISPUTE REGARDING THE APPROPRIATE ROLE OF BAR COUNSEL IN LITIGATING DISCIPLINARY PROCEEDINGS TO THE HEARING PANEL

{¶ 27} The duties of bar counsel are set forth in Gov.Bar R. V(6)(C). Division (5) of that rule provides that one of bar counsel's duties is "[s]erving as designated lead counsel of record in each formal complaint filed with the Board after January 1, 2021, by the bar counsel's certified grievance committee." The rule specifies that the "designation as lead counsel requires bar counsel to participate personally and substantially in the post-complaint adjudication process" and provides an illustrative list of those duties, which includes "attending and litigating the case before the hearing panel."

---

2. In a similar vein, we have twice ordered disciplined attorneys to make restitution of amounts that other courts have ordered the disciplined attorneys' clients to pay as a direct result of the attorneys' charged misconduct. *See Disciplinary Counsel v. Peck*, 150 Ohio St.3d 130, 2017-Ohio-2961, 79 N.E.3d 545 (ordering an attorney to make restitution to a former client in an amount equal to the default judgment entered against the client as a direct result of the attorney's incompetent representation and neglect); *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935 (ordering an attorney to make restitution of $1,000 plus judgment interest as restitution for the discovery and contempt sanctions that a client was ordered to pay as a direct result of the attorney's misconduct).

{¶ 28} Gov.Bar R. V(6)(C)(5) further provides:

Bar counsel may delegate some aspects of discovery, pleading preparation, or hearing presentation to assistant bar counsel or volunteer certified grievance committee members, provided that all of the following requirements are met:

(a) The attorney to whom responsibilities are delegated is identified as counsel in the case;

(b) Bar counsel directly supervises the attorney to whom responsibilities are delegated;

(c) Bar counsel remains primarily responsible for litigating the case to the hearing panel.

{¶ 29} In this case, Kent Markus, bar counsel for relator, was present at the panel hearing but was not seated at the trial table. In its report to this court, the board stated that Markus, "in contravention of Gov.Bar R. V, Section 6(C)(5), advised the panel * * *, 'I don't expect to participate in the hearing other than watching the show.' " The hearing transcript shows that the panel chair who presided over Bulson's disciplinary hearing interpreted Gov.Bar R. V(6)(C)(5) to require bar counsel, as the lead trial lawyer of a certified grievance committee, to litigate the case to the panel. Markus, on the other hand, represented to the panel that he had "significantly participated in every aspect of this case" and expressed his understanding that the rule did not require him to litigate the hearing himself as long as he ensured that the presentation was effective, appropriate, and complete.

{¶ 30} The board reported that the panel considered the rule and, in lieu of continuing the hearing or dismissing the action, the panel allowed Deputy Bar Counsel Holly N. Wolf and volunteer certified-grievance-committee member Daniel R. Mordarski to proceed on relator's behalf. The board also indicated that

this had been the second panel hearing in which Markus refused to comply with Gov.Bar R. V(6)(C)(5).

{¶ 31} In its second objection to the board's report, relator "seeks clarification" from this court regarding the proper interpretation of Gov.Bar R. V(6)(C)(5). However, the resolution of the apparent conflict between the interpretations of the panel chair and relator will have no impact on the outcome of this disciplinary case. It is well settled that this court does not issue advisory opinions. *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (2000), and *Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus. We therefore overrule relator's second objection.

{¶ 32} We note, however, that Gov.Bar R. V(2)(D) expressly authorizes the board to issue nonbinding advisory opinions in response to prospective or hypothetical questions regarding the application of the Supreme Court Rules for the Government of the Bar of Ohio. If relator desires such an opinion, it may file a written request with the director of the board under the Board of Professional Conduct of the Supreme Court of Ohio Procedural Regulation 15.

**CONCLUSION**

{¶ 33} Accordingly, relator's objections to the board's report are overruled and Douglas W. Bulson Jr. is hereby suspended from the practice of law in Ohio for 18 months with 12 months stayed on the condition that he commit no further misconduct. If Bulson fails to comply with the condition of the stay, the stay will be revoked and he will be required to serve the full 18-month suspension. In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24), Bulson shall be required to submit proof that he has completed three hours of CLE focused on law-office management in addition to the CLE requirements of Gov.Bar R. X. Upon reinstatement, Bulson shall be required to serve a one-year period of

monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Bulson.

Judgment accordingly.

DeWine, Donnelly, and Stewart, JJ., concur.

Kennedy, C.J., concurs in part and dissents in part, with an opinion.

Fischer, J., concurs in part and dissents in part, with an opinion joined by Deters, J.

Brunner, J., not participating.

_____

**Kennedy, C.J., concurring in part and dissenting in part.**

{¶ 34} I agree with the majority opinion and the sanction of an 18-month suspension of respondent, Douglas W. Bulson Jr., from the practice of law, with 12 months of that suspension stayed on the condition that he commit no further misconduct. I part ways with the majority only with regard to the term of monitored probation. I would impose conditions on the monitored probation. Because the majority does not, I dissent in part.

{¶ 35} Conditions on probation are an essential part of Ohio's attorney-discipline system. *See Disciplinary Counsel v. Halligan*, 157 Ohio St.3d 447, 2019-Ohio-3748, 137 N.E.3d 1141, ¶ 43 (Kennedy, J., concurring in part and dissenting in part). Recently, in *Disciplinary Counsel v. Shaaban*, ___ Ohio St.3d ___, 2023-Ohio-3671, ___ N.E.3d. ___, ¶ 56, this court included in the attorney's sanction "an 18-month period of monitored probation in accordance with Gov.Bar R. V(21) focused on general oversight of his practice." Shaaban had engaged in a wide variety of misconduct involving several clients, including sharing fees with a nonlawyer, failing to act with reasonable diligence and promptness, failing to appear at multiple court hearings, failing to reasonably communicate with his clients, filing pleadings alleging defenses that he should have known did not apply to the facts of the case, and making false statements to courts and opposing counsel.

13

The breadth of Shaaban's misconduct meant that a more general review of his practice by the monitoring attorney during Shaaban's probation was appropriate. Although the monitoring attorney's review of Shaaban's practice is general, the condition imposed by this court was specific.

**{¶ 36}** Here, Bulson violated several conduct rules, but all were related to the representation of a single client and his failure to communicate with her and to exercise diligence in representing her. The majority imposes a "one-year period of monitored probation" with no conditions. Majority opinion, ¶ 33. Here, more detailed conditions would benefit Bulson, give guidance to the monitoring attorney, and provide greater protection to the public. "Specific conditions of probation" and "[e]stablishing expectations for a respondent and his or her monitoring attorney" are "also what the Rules for the Government of the Bar require." *Columbus Bar Assn. v. Christensen*, 159 Ohio St.3d 374, 2020-Ohio-167, 151 N.E.3d 552, ¶ 35 (Kennedy, J., concurring in part and dissenting in part); *see also* Gov.Bar R. V(21)(B)(1) ("[t]he monitoring attorney shall * * * [m]onitor compliance by the respondent with the conditions of probation imposed by the Supreme Court").

**{¶ 37}** Therefore, I would impose the following conditions on Bulson's monitored probation: (1) each month, Bulson shall give the monitoring attorney all the fee agreements that he enters into with clients so that the monitoring attorney can review them; (2) each month, the relator or monitoring attorney shall randomly review files of Bulson's active cases to ensure his compliance with the Rules of Professional Conduct; and (3) Bulson, with the monitoring attorney, shall design a comprehensive plan to ensure that he is reasonably diligent in the representation of his clients. In the event that Bulson does not act with reasonable diligence in representing his clients, the relator or monitoring attorney may limit the number of active cases that he may maintain.

**{¶ 38}** Because the majority imposes *no* conditions on the monitored probation, I dissent in part.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 39} I agree with the per curiam opinion's imposition of an 18-month suspension, with 12 months of that suspension stayed, and a one-year period of monitored probation. But unlike the first opinion concurring in part and dissenting in part, I believe that a general term of monitored probation is appropriate, and I do not believe that this court should set forth specific conditions for that probation. *See Disciplinary Counsel v. Halligan*, 157 Ohio St.3d 447, 2019-Ohio-3748, 137 N.E.3d 1141 (Fischer, J., concurring). In this case, a general term of monitored probation is not only allowed under the Rules for the Government of the Bar, *see id.* at ¶ 31-35 (Fischer, J., concurring), but is *necessary*, because respondent, Douglas W. Bulson Jr., has been disciplined multiple times for a range of violations, including neglecting client matters, failing to reasonably communicate with clients, improperly managing his client trust account, and failing to return unearned fees and property to his clients. As my opinion in *Halligan* explains, a general term of probation without specific conditions allows us to keep a disciplined lawyer " ' on a short leash.' " *Id.* at ¶ 36 (Fischer, J., concurring), quoting *Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, ¶ 47 (Fischer, J., concurring in part and dissenting in part). Therefore, I agree with the per curiam opinion on the imposition of a suspension and a general term of monitored probation.

{¶ 40} However, I disagree with the decision not to impose restitution. While the per curiam opinion states that restitution is based not on the client's loss but on the attorney's gain, the case that the per curiam cites for that principle is not an attorney-discipline case, *see Cirino v. Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 26, and we have ordered restitution in the past that goes beyond the attorney's unlawful gain. For example, in *Toledo Bar Assn. v. Berling*, 160 Ohio St.3d 90, 2020-Ohio-2838, 153 N.E.3d 83, we ordered

the disciplined attorney, Mark Berling, to pay restitution for his client's payment to a different attorney, whom she was forced to hire shortly before trial at a substantial cost to her, because of Berling's misconduct. *Id.* at ¶ 18, 20, 41. Likewise, in *Lorain Cty. Bar Assn. v. Lewis*, 164 Ohio St.3d 147, 2021-Ohio-805, 172 N.E.3d 139, a case similar to this one, the disciplined attorney, Kenneth Lewis, paid restitution that included reimbursement for the cost of the attorney that the client had hired to prepare qualified domestic relations orders ("QDRO") after Lewis failed to do so. *Id.* at ¶ 5, 8.

**{¶ 41}** While lost investment income may not normally be a part of reasonable restitution, in this case, that restitution is justified due to the extraordinary delay. Bulson's client, Amy Shepherd, was deprived of *nine years* of investment income due directly to Bulson's misconduct. Furthermore, relator presented ample evidence of Shepherd's loss through the testimony of a financial advisor and three exhibits demonstrating the growth that Shepherd's QDRO settlement could have generated over the course of nine years. The board found that the evidence presented was insufficient because relator did not request a specific amount of restitution and did not question Shepherd about how she would have invested the QDRO settlement had she received it right away. But the board was presented with five different restitution amounts based on different investment strategies ranging from conservative to aggressive. If the board were concerned about awarding Shepherd too much restitution, it could have awarded her the lowest amount of restitution supported by the evidence that was based on a conservative investment strategy. Shepherd is entitled to at least that much. Therefore, I dissent from the portion of the per curiam opinion denying restitution.

DETERS, J., concurs in the foregoing opinion.

———————————

Kent R. Markus, Bar Counsel, and Holly N. Wolf, Deputy Bar Counsel; Ice Miller, L.L.P., and Amy E. Flowers; Mordarski Law and Daniel R. Mordarski; and Bricker Graydon, L.L.P., and Randolph C. Wiseman, for relator.

Douglas W. Bulson Jr., pro se.

_____